SHERIFF, CLARK COUNTY, NEVADA, Appellant, *v.* THOMAS ANDREW KEENEY, Respondent.

No. 19288

April 19, 1990                              791 P.2d 55

*Rex Bell*, District Attorney, and *Daniel M. Seaton*, Deputy District Attorney, Clark County, for Appellant.

*Joseph W. Houston, II,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In separate proceedings below, district courts in two different departments of the Eighth Judicial District dismissed successive indictments returned against respondent Thomas Andrew Keeney by Clark County Grand Juries. The state appeals the order entered in Department IX on June 7, 1988, granting Keeney's pretrial petition for a writ of habeas corpus and dismissing the second indictment. For the reasons set forth below, we reverse and remand this matter for trial.

### FACTS

On July 23, 1987, a Clark County Grand Jury returned an indictment in Department XI of the Eighth Judicial District Court

accusing Thomas Andrew Keeney of one count of attempted murder with the use of a deadly weapon, one count of mayhem, and two counts of battery with the use of a deadly weapon. Thereafter, Keeney filed in the district court a pretrial petition for a writ of habeas corpus challenging the indictment. The petition asserted numerous grounds for relief, including allegations that prosecutorial misconduct occurred throughout the grand jury proceedings. Following a hearing, District Judge Addeliar D. Guy entered an order on November 3, 1987, granting Keeney's petition and dismissing the indictment. The record establishes, however, that Judge Guy neither reached nor resolved Keeney's allegations of prosecutorial misconduct. Rather, it is clear from the record that the judge issued the writ and dismissed the initial indictment solely because the state had failed to alleviate his concerns about the technical sufficiency of the true bill returned by the grand jury. *See* NRS 172.255. The record also establishes that the judge specifically dismissed the indictment "without prejudice" and with leave to the state to re-indict. Thus, implicitly, Judge Guy found that no defects in the indictment were caused by the district attorney's willful failure to comply with or conscious indifference to important procedural rules. *See* Mercado v. Sheriff, 94 Nev. 771, 587 P.2d 1327 (1978). Neither the state nor Keeney filed an appeal from Judge Guy's decision.

The district attorney then commenced new proceedings before a second grand jury. Eleven of the grand jurors sitting on the second grand jury had previously served on the first grand jury. The second panel again heard and considered eyewitness testimony and other evidence which established probable cause to believe that, on May 30, 1987, Keeney accosted his wife in the Uptown Bar in Las Vegas, Nevada, and severely slashed her across the face with a razor sharp utility knife. Additionally, the grand jury heard from two other victims who testified that they too were cut and slashed by Keeney in the bar that morning. The bar owner's son also testified that, in the ensuing struggle to subdue Keeney, he witnessed a patron of the bar retrieve the knife from Keeney's hand. The son obtained the knife from the patron and later gave it to the police. The knife itself was introduced as evidence in the grand jury proceeding. Subsequently, the grand jury returned an indictment accusing Keeney of the identical criminal offenses charged in the first indictment. On February 26, 1988, the second indictment was formally filed in Department IX of the Eighth Judicial District Court.

Keeney once again filed a pretrial petition for a writ of habeas corpus. The second petition reasserted his allegations that prosecutorial misconduct improperly influenced the first grand jury's deliberations. Additionally, Keeney alleged that the prior prose-

cutorial misconduct had "fatally infected" the second grand jury's deliberations because eleven grand jurors had served on both the first and second panels.

On May 31, 1988, following a hearing, District Judge Stephen Huffaker ruled from the bench that "[t]here was prosecutorial misconduct the first time [the matter] was presented" to the grand jury, "and that was overturned by another department in this court."[1] On June 7, 1988, Judge Huffaker entered a written order concluding that prosecutorial misconduct had occurred before the grand jury and that the grand jury process had been "tainted from the beginning. . . ." Accordingly, that order granted Keeney's petition and issued a writ dismissing the second indictment.[2] The state now appeals.

## DISCUSSION

Preliminarily, we observe that "dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized." *See* United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978). Implicit in the decisions of most courts addressing prosecutorial misconduct or basic unfairness that violates due process within grand jury proceedings "is the concept that substantial prejudice to the defendant must be demonstrated before the province of the independent grand jury is invaded." *See* Buzbee v. Donnelly, 634 P.2d 1244, 1255 (N.M. 1981). *See also* Russell v. United States, 369 U.S. 749 (1962); United States v. Birdman, 602 F.2d 547 (3d Cir. 1979), *cert. denied,* 444 U.S. 1032 (1980). In the federal system, although inherent supervisory authority arising from the judiciary's responsibility to assure fairness in the processes of justice empowers the courts to dismiss an indictment on the basis of governmental misconduct, the exercise of that supervisory authority is "more often referred to than invoked." *See* United States v. Baskes, 433 F.Supp. 799, 806 (N.D.Ill. 1977). Generally speaking, federal courts often decline to utilize that authority in the absence of circumstances demonstrating substantial prejudice to the accused or a compelling need to utilize dismissal "as a prophylactic tool for discouraging future deliberate governmental impropriety of a similar nature." *Owen,* 580 F.2d at 367-68.

---

[1] As noted above, however, our review of the record reveals that District Judge Guy neither reached nor necessarily resolved the contentions respecting prosecutorial misconduct presented in Keeney's first petition.

[2] We note that the order appealed from does not specifically indicate whether the district court intended to dismiss the indictment with or without prejudice to the state's right to proceed anew. *See generally,* State v. Babayan, 106 Nev. 155, 787 P.2d 805 (1990). Nor does it set forth specific findings of fact and expressly state the district court's conclusions of law. *See* NRS 34.830 (after any determination on a habeas petition, the court shall make specific findings and expressly state its conclusions).

In Nevada, a similar rule obtains. We recently observed, for example, that at the state level "the dismissal of an indictment serves equally well to eliminate prejudice to a defendant and to curb the prosecutorial excesses of a District Attorney or his staff." *See* State v. Babayan, 106 Nev. at 173, 787 P.2d at 818 (1990). In *Babayan,* we also acknowledged that "dismissal with prejudice is warranted when the evidence against a defendant is irrevocably tainted or the defendant's case on the merits is prejudiced to the extent 'that notions of due process and fundamental fairness would preclude reindictment.'" *Id.* (citing United States v. Lawson, 502 F.Supp. 158, 172 (D.Md. 1980)). With these general observations in mind, we turn to an analysis of Keeney's specific allegations of governmental impropriety.

As noted, Keeney contended below that the second indictment should be set aside because eleven grand jurors had been previously misled and prejudiced by prosecutorial misconduct that invaded the independent province of the first grand jury. Specifically, Keeney complained that, although the prosecutor continually advised the first grand jury that he could not personally give evidence or argue the evidence, the prosecutor did in fact argue the evidence and, in the process, improperly stated his personal views and the opinions of the District Attorney's Office regarding what that evidence established. Further, Keeney asserted, the prosecutor improperly implied that more possible witnesses and additional evidence could be presented establishing probable cause to indict.

Our review of the transcript reveals, however, that the prosecutor did not gratuitously offer the challenged comments; rather, his remarks came in response to insistent questioning from jurors curious about the presentation of circumstantial evidence and indirect testimony respecting Keeney's alleged use of a deadly weapon.[3] For example, one juror asked "what the thinking" of the District Attorney's Office was "on why they didn't have more eyewitnesses appear before the grand jury." When the prosecutor cautioned, "I'm not allowed to either present evidence to you or to comment on the evidence," the juror nonetheless insisted on knowing "why [the prosecutor] did not bring in more eyewitnesses for us." In response, the prosecutor explained:

---

[3]The first grand jury heard little direct evidence of the weapon that was allegedly used in the attacks. In essence, the state only presented somewhat uncertain testimony, as well as photographs of the victims' wounds, as evidence from which the jury might infer probable cause to believe that Keeney used a deadly weapon. As noted above, however, in the second grand jury proceeding, an eyewitness testified that he personally observed another individual remove a utility knife from Keeney's hand, and that he personally turned it over to the police when they arrived at the scene. Further, the knife itself was presented as evidence for the jury's consideration in the second proceeding.

> At trial, we bring in every conceivable witness we have in a case. At a probable cause determination we bring in what evidence we think ahead of time will be enough to let you make a determination on probable cause.

Further, the prosecutor stated, "it was our thought as we began to present the case" that photographs depicting the cuts inflicted on the victims "would be sufficient" to establish probable cause to believe that a deadly weapon had been used in the attacks. In the same breath, however, the prosecutor appropriately advised the grand jury, "but if you want us to explore the question of the [utility knife] that was recovered more by bringing in [additional witnesses], then like I say, we'll be glad to do that. We're not trying to hide anything here." At another point, again in response to a juror's question, the prosecutor provided the jurors with explicit examples of circumstantial evidence that could support a finding of probable cause respecting the use of a deadly weapon. Again, however, the prosecutor emphasized that he was not "arguing to you what you should or should not find." Rather, he stated, he was merely attempting to convey that probable cause might be appropriately inferred from circumstantial evidence.

In assisting the grand jury in the proper performance of its function, a prosecutor, although authorized to recite and explain the law, must nevertheless scrupulously refrain from words or conduct that will invade the province of the grand jury. *See* Franklin v. State, 89 Nev. 382, 513 P.2d 1252 (1973). *See also* Sheriff v. Frank, 103 Nev. 160, 734 P.2d 1241 (1987) (citing *United States v. Dionisio*, 410 U.S. 1, 16-17 (1973)). In our view, the prosecutor's statements in this instance did not manipulate the grand jury or invade its exclusive independent province. Rather, the comments were simply straightforward attempts to respond truthfully to the jurors' questions and to explain the law, procedure and quantum of proof applicable to grand jury proceedings. Our cases clearly establish that the grand jury may request advice and that the prosecutor is authorized to explain matters of law. *See* Phillips v. Sheriff, 93 Nev. 309, 565 P.2d 330 (1977); Franklin v. State, 89 Nev. at 386, 513 P.2d at 1255. Further, the prosecutor correctly and repeatedly advised the jurors that he was there to assist them in their inquiry and that, at their direction, he would attempt to obtain any further evidence they deemed appropriate. Under these circumstances, and when his remarks are considered in their proper context, we are not persuaded the prosecutor inappropriately argued the evidence to the grand jury or unduly inferred that additional evidence was available supporting a finding of probable cause. Thus, we conclude that no impairment of or interference with the independent

investigation and judgment of the grand jury resulted from the prosecutor's explanations.

Additionally, we note that most of the first grand jury's questions evidently emanated from the fact that only circumstantial rather than direct evidence had been presented concerning Keeney's alleged use of a deadly weapon. In the second grand jury proceeding, however, any concerns over the prosecutor's prior alleged references to additional evidence and the inferences that could be properly drawn from circumstantial evidence were obviated by substantial direct testimony and evidence respecting Keeney's possession of a utility knife. Therefore, even assuming that the prosecutor's remarks may have invaded or manipulated the first grand jury's deliberations, his comments were ultimately of no significant or prejudicial import. *See, e.g.,* United States v. Bruzgo, 373 F.2d 383 (3rd Cir. 1967) (where no claim was made that evidence before the grand jury was insufficient to support indictment and the votes of the grand jurors were not necessarily based on bias created by prosecutor's remarks causing the jury to "hiss" a witness, the court found no defect of constitutional or legal proportions). Contrary to the allegations in Keeney's petition below, therefore, we conclude that the prosecutor's comments were ultimately innocuous, and neither "inflamed" the first grand jury, nor "fatally infected" the subsequent grand jury's deliberations.

Keeney further complained below that the prosecutor misinformed the first grand jury that the state's invitation to defense counsel to present exculpatory evidence to the grand jury "met with a negative response." Rather than negatively responding to the state's invitation, Keeney maintained, his counsel simply made no response whatsoever. Thus, Keeney argued, the prosecutor's comment was not only inaccurate and misleading, but it was extremely prejudicial and violative of the prosecutor's duty to refrain from commenting on an accused's exercise of his right to remain silent. We disagree.

Even assuming that the comment in question inaccurately characterized defense counsel's response, we note that there is no indication in the record that the prosecutor intentionally sought to mislead or manipulate the grand jury. Further, the prosecutor specifically and correctly advised the grand jury that any such "negative response" should not be held against the defendant and that Keeney was not required to prove anything.[4] Consequently,

---

[4]Additionally, we note that, pursuant to NRS 172.095(1)(d), the district court presumably instructed the grand jurors at the time they were impaneled

we conclude, the prosecutor's remarks did not influence the grand jury to return an indictment based upon Keeney's exercise of his right to remain silent.

Keeney also complained below that remarks of the deputy district attorney at the outset of the second grand jury proceeding misinformed the jurors that Judge Guy's dismissal of the first indictment was predicated upon "no legal finding," and that the judge sent the case back to the grand jury simply because he "wanted it to go smoother, to read smoother on the record." A more detailed and accurate account would have explained that Judge Guy dismissed the first indictment because the Office of the District Attorney did not timely comply with the judge's order commanding clarification of the indictment by way of a re-ballot or a new vote restating which offenses, if any, were to be true-billed. Nonetheless, in the context of the proceedings, we are not persuaded that the deputy district attorney's superficial explanation materially misled the grand jury or unduly interfered with its function to inquire into the existence of probable cause. Nor was Keeney prejudiced in any manner. Thus, we conclude, this allegation of misconduct is also insufficient to warrant dismissal of the indictment.

Lastly, we observe that the initial indictment against Keeney was dismissed without prejudice and with leave for the state to re-indict. Where, as here, such a determination remains unchallenged, and the record reflects that the initial grand jury proceeding was not compromised by governmental misconduct or manipulation, the mere participation of the same grand jurors in a subsequent proceeding does not establish that an indictment was returned by a prejudiced grand jury. See Bonnenfant v. State, 86 Nev. 393, 396, 469 P.2d 401, 403 (1970) (where an indictment is returned by the same grand jury that previously considered the identical criminal charges, a "court need no longer be concerned whether the indictment was returned by a 'prejudiced' grand jury since the evidence may be reviewed to determine legal sufficiency"). See also Mercado v. Sheriff, 94 Nev. at 772, 587 P.2d at 1328-29 (1978).

A review of this record establishes that, quite apart from any allegations of bias resulting from the alleged prosecutorial misconduct, substantial competent evidence was presented to the grand jury establishing probable cause to indict.[5] See United

---

that "the failure of a person to exercise his right to testify . . . must not be considered in their decision of whether or not to return an indictment."

[5]Notably, Keeney's second petition did not challenge the sufficiency of the evidence supporting the grand jury's probable cause determination.

States v. Riccobene, 451 F.2d 586 (3rd Cir. 1971) (where an abundance of competent evidence supported a finding of probable cause, governmental misconduct did not invalidate the indictment because the votes of the grand jurors were not necessarily based on bias resulting from the governmental improprieties); *see also* United States v. Bruzgo, 373 F.2d 383 (3rd Cir. 1967). Of course, at this stage of the proceedings, we express no opinion respecting Keeney's ultimate guilt or innocence. We emphasize, however, that the record quite clearly reveals that both grand juries heard more than adequate, admissible evidence supporting a finding of probable cause that the charged crimes had been committed and that Keeney committed them. *See* NRS 172.155; Franklin v. State, 89 Nev. at 387, 513 P.2d at 1256 ("the legal efficacy of an indictment will be sustained if there has been presented to the grand jury the slightest sufficient legal evidence and best in degree even though inadmissible evidence may also have been adduced. . . ."); Robertson v. State, 84 Nev. 559, 445 P.2d 352 (1968).

## CONCLUSION

In light of the abundant competent evidence supporting the finding of probable cause to indict, we conclude that no governmental misconduct unfairly manipulated or invaded the independent province of the grand jury. Further, the record establishes no prejudice to Keeney's case on the merits, nor any evidentiary taint—irrevocable or otherwise. Thus, dismissal of the indictment either with or without prejudice to the state's right to proceed anew constitutes reversible error. Accordingly, we reverse the order of the district court granting Keeney's petition for a writ of habeas corpus, and we remand this matter for trial on the criminal counts charged in the grand jury's indictment.