**Robyn Leroy PARKS,**
**Petitioner–Appellant,**

**v.**

**James SAFFLE \*, Warden, Oklahoma State Penitentiary, McAlester, Oklahoma; Larry Meachum, Superintendent, Oklahoma Department of Corrections; and Robert H. Henry \*\*, Attorney General, State of Oklahoma, Respondents–Appellees.**

**No. 86–1400.**

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1991.

Mandy Welch, Deputy Appellate Public Defender, Oklahoma Appellate Public Defender System, Norman, Okl. (Vivian Berger, New York City, and Lewis Barber, Jr., Oklahoma City, Okl., on the brief), for petitioner-appellant.

Robert A. Nance, Asst. Atty. Gen., Deputy Chief, Federal Div. (Robert H. Henry, Atty. Gen. of Oklahoma, with him on the brief), Oklahoma City, Okl., for respondents-appellees.

Before HOLLOWAY, McKAY, LOGAN, SEYMOUR, MOORE, ANDERSON, TACHA, BALDOCK, BRORBY, and EBEL, Circuit Judges.

---

\* The court's previous opinions, reported at 840 F.2d 1496 (10th Cir.1987) and 860 F.2d 1545 (10th Cir.1988), included John N. Brown, Warden, Oklahoma State Penitentiary, McAlester, Oklahoma, as a respondent-appellee. In this order the case caption has been amended to substitute James Saffle, the successor to John N. Brown, as Warden, Oklahoma State Penitentiary, McAlester, Oklahoma.

\*\* In this opinion on rehearing the caption has been amended to substitute Robert H. Henry, the successor to Michael C. Turpen, as Attorney General, State of Oklahoma.

EBEL, Circuit Judge.

The issue to be decided in this, our second en banc consideration of petitioner's habeas petition, is whether the prosecutor's anti-sympathy comments combined with an anti-sympathy instruction given by the court during the penalty stage of petitioner's capital trial influenced the jury improperly to discount mitigating evidence presented by the defendant. The United States Supreme Court in *Saffle v. Parks,* —— U.S. ——, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), held that the anti-sympathy jury instruction by itself did not violate the defendant Robyn Leroy Parks' constitutional rights. The Supreme Court did not, however, address whether the prosecutor's anti-sympathy comments combined with the anti-sympathy instruction improperly influenced the jury. That issue is now before us on remand of this case from the Supreme Court. We hold that the prosecutor's remarks, when considered in conjunction with the instructions given, did not have the effect of prohibiting the jury from considering any of Parks' mitigating evidence. Therefore, we affirm the order of the district court denying Parks' petition for habeas relief.

## FACTS

In 1978, a jury found Parks guilty of murdering a gas station attendant whom

he feared would inform the police of his use of a stolen credit card.[1] During the sentencing phase of the trial, the trial judge allowed Parks to put on any mitigating evidence that he desired. Through his father's testimony, Parks put on evidence of his background, his broken home and various other experiences in his life. After both sides had presented their sentencing evidence, the jury was instructed that it could not impose the death penalty unless it found one or more specifically enumerated aggravating circumstances. The jury was further instructed that if it found aggravating circumstances, it must balance them against any mitigating circumstances it might find. A number of potential mitigating circumstances were listed in the jury instruction. However, the jury was advised that the mitigating circumstances listed in the instruction were not exclusive and that the "facts or evidence that may constitute an additional mitigating circumstance is for the jury to determine." Additionally, the jury was given what is referred to as an anti-sympathy instruction (Instruction Nine), of which the most critical portion was as follows: "You must avoid any influence of sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence."[2]

At the conclusion of the sentencing phase of the trial, the jury sentenced Parks

---

**1.** A more complete exposition of the facts is provided in our previous en banc opinion. *Parks v. Brown,* 860 F.2d 1545 (10th Cir.1988).

**2.** The full instruction, Instruction No. 9 in the penalty trial, provided:

In arriving at your determination as to what sentence is appropriate under the law, you are authorized to consider all the facts and circumstances of this case whether presented by the State or the defendant and whether presented in the first proceeding or this sentencing proceeding.

All of the previous instructions given you in the first part of this trial apply where applicable and must be considered along with these additional Instructions; together they contain all the law of any kind to be applied by you in this case, and the rules by which you are to weigh the evidence and determine the facts in issue. You must consider them all together, and not a part of them to the exclusion of the rest.

You are the judges of the facts. The importance and worth of the evidence is for you to determine. *You must avoid any influence of*

*sympathy, sentiment, passion, prejudice, or other arbitrary factor when imposing sentence.* You should discharge your duty as jurors impartially, conscientiously and faithfully under your oaths and return such verdict as the evidence warrants when measured by these Instructions.

The Court has made rulings during the sentencing stage of this trial. In doing so, the Court has not expressed nor intimated in any way the conclusions to be reached by you in this case. The Court specifically has not expressed any opinion as to whether or not any statutory aggravating circumstances exist, or whether or not any mitigating circumstances exist.

You must not use any method of chance in arriving at a verdict but must base it on the judgment of each juror concurring therein.

You have already elected a Foreman. Your verdict must be unanimous. Proper forms of verdict will be furnished you from which you shall choose one to express your decision. When you have reached a verdict, all of you in a body must return it into open court.

to death. Parks' conviction and sentence were affirmed on direct appeal by the Oklahoma Court of Criminal Appeals. *Parks v. State,* 651 P.2d 686 (Okl.Crim.App.1982). The United States Supreme Court denied certiorari. 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). After seeking post-conviction relief in the state court, Parks filed a petition for writ of habeas corpus in the federal courts. One of the issues raised in his petition for habeas corpus was whether the use of Instruction Nine violated his Eighth Amendment rights. In a divided en banc opinion, this court concluded that Instruction Nine by itself violated Parks' constitutional rights by limiting Parks' right to have the jury consider relevant mitigating evidence. *Parks,* 860 F.2d at 1559. We accordingly granted the requested habeas relief without reaching the related issue raised by Parks of whether his constitutional rights were violated when the jury considered Instruction Nine *in conjunction with* the prosecutor's anti-sympathy comments.[3]

The United States Supreme Court reversed our en banc decision, holding that the anti-sympathy instruction by itself did *not* violate Parks' constitutional rights. The Court held that Parks' argument advocated a new rule under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) and *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), and could not be applied retroactively. *Saffle,* 110 S.Ct. at 1260. According to the majority, *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), which predated Parks' trial, simply precluded the state from barring "relevant mitigating evidence from being presented and considered dur-

ing the penalty phase of a capital trial." *Saffle,* 110 S.Ct. at 1261.[4] The Court observed that Instruction Nine did not restrict *what* mitigating evidence the jury could consider, but rather it addressed only *how* the jury could consider such evidence. *Id.* This "how/what distinction" was central to the court's analysis:

> Parks asks us to create a rule relating, not to *what* mitigating evidence the jury must consider in making its decision but to *how* it must consider the mitigating evidence. There is a simple and logical difference between rules that govern what factors the jury must be permitted to consider in making its sentencing decision, and rules that govern how the state may guide the jury in considering and weighing those factors in reaching a decision. `

*Id.*

We now review Parks' reserved claim that the prosecutor's anti-sympathy comments combined with Instruction Nine violated his constitutional rights. In accordance with the analysis set forth in the Supreme Court's opinion, we endeavor to determine whether the anti-sympathy comments complained of by the petitioner had the effect of precluding *what* mitigating evidence the jury could consider in sentencing as opposed to addressing *how* they could consider it.

## ANALYSIS

In his brief petitioner points out several incidents where the prosecutor encouraged the jury to avoid the influence of sympathy. Two of the comments merely tracked Instruction Nine. Because the Supreme Court upheld the constitutionality of Instruction Nine in *Saffle,* we cannot grant

---

The law provides that you should now listen to and consider the further argument of counsel.
(emphasis added).

**3.** Justice O'Connor, in her concurring opinion in *California v. Brown,* 479 U.S. 538, 546, 107 S.Ct. 837, 841, 93 L.Ed.2d 934 (1987), had called for a remand in that case to "determine whether the jury instructions, taken as a whole, and considered in combination with the prosecutor's closing argument, adequately informed the jury

of its responsibility to consider all of the mitigating evidence introduced by the respondent." It is precisely this additional analysis that Parks raises in this related issue.

**4.** In *Eddings,* for example, the Court held that the sentencing judge committed constitutional error when he refused to consider mitigating evidence introduced by the defendant consisting of his family background and upbringing. *Eddings,* 455 U.S. at 117, 102 S.Ct. at 878.

the petitioner's request for habeas relief based upon these two comments.

The first of these, occurring in the voir dire portion of the trial, merely informed the jury of *how* they were to consider the evidence—not *what* evidence they could consider.

> Of course the Court will instruct you that you should not allow sympathy, sentiment or prejudice to enter into your deliberations. And, frankly, that's just as cold blooded as you can put it.
>
> During this trial, no matter if you get to dislike me as an attorney or you don't like the way I part my hair or you don't like David Hood, or you think he looks real good and you think you ought to rule for it that way; as Judge Cannon told you, you can have your sympathies and your sentiment and your prejudices all you want to—you know you can be as sympathetic as you want to or you can be as prejudiced as you want to be, but you can't do it and sit on this jury. So that's just a real simple way that Judge Cannon put it to you.
>
> You cannot allow your sympathy, sentiment or prejudice to influence you in this case and sit on this jury. And now is the time for us to find out if you will eliminate any sympathy, sentiment or prejudice in this case. Will all of you do that?

Tr.Vol. I at 86–87.

The second comment, occurring during the prosecutor's final rebuttal argument at the closing of the sentencing phase of the trial, likewise limited *how* the jury was to consider the evidence:

> [The defense counsel's] closing arguments are really a pitch to you for sympathy—sympathy, or sentiment or prejudice; and you told me in voir dire you wouldn't do that.

> Well, it's just cold turkey. He either did it or he didn't. He either deserves the death penalty or he doesn't, you know. You leave the sympathy, and the sentiment and prejudice part out of it.

Tr.Vol. V at 725–26.

Both of these comments addressed only *how* the jury can consider the evidence—not *what* evidence it can consider. Therefore, under *Saffle*, these two comments pass constitutional muster.

Several other comments arguably went beyond Instruction Nine. Once again, the issue before this court is whether these comments, when viewed in conjunction with Instruction Nine, violated Parks' constitutional rights. Because we conclude that there was not "a reasonable likelihood" that the prosecutors comments were applied by the jury in a way that interfered with the jury's consideration of constitutionally relevant evidence, we deny the petitioner's request for habeas relief. *See Boyde v. California,* — U.S. —, 110 S.Ct. 1190, 1198, 108 L.Ed.2d 316 (1990).[5]

All of these comments occurred in the voir dire portion of the trial. For example, when the prosecutor was addressing an individual venireman, he asked, "unless the court instructs you that under the law, if a fellow has a different lifestyle that entitles him to commit a murder, you wouldn't allow that to influence you, would you?" Tr.Vol. I at 124. The prosecutor went on to ask that prospective juror: "And no matter what his lifestyle was, if the state proves to your satisfaction beyond a reasonable doubt that he is guilty, then irregardless of his lifestyle, you wouldn't let that influence your verdict, would you?" *Id.* at 124–24. A little later during the voir dire, the prosecutor asked a welfare department employee whether he sympathized with welfare recipients "solely for the rea-

---

5. In *Boyde,* the Court held that the "reasonable likelihood" standard was the correct standard to use when reviewing the constitutionality of a jury instruction in a capital case. The court implicitly also applied the "reasonable likelihood" standard when it reviewed the impact of the prosecutor's comments and their effect upon the jury's understanding of the relevant instruction. *Boyde,* 110 S.Ct. at 1200. We note, however, that while the same standard applies when reviewing, both the jury instructions and the prosecutor's comments, because the prosecutor's comments by their nature carry less weight with the jury than jury instructions, the likelihood that the comments influenced the jury is generally less. *See* note 6 & accompanying text, *infra.*

son that it's necessary that they come in and get welfare payments." When he responded, "[n]o, sir," the prosecutor followed by stating:

> And, in any event, you wouldn't consider a different lifestyle as—if it's—unless the court so instructs you that if you have a different lifestyle that it's all right to go out and do things that other people can't do, you wouldn't feel like a different lifestyle would give anyone a right to do anything that is in violation of the law, would you?

*Id.* at 155.

It is far from clear that these comments refer to *what* the jury could consider as mitigating evidence. In any event, these comments were directed towards a finding of guilt—not towards a determination of Parks' sentence. Given the nature of these comments as made in this case, and further given the timing of them during the voir dire portion of the trial, *see Coury v. Livesay,* 868 F.2d 842, 845–46 (6th Cir.1989), we conclude that there is not a reasonable likelihood the jurors here understood the challenged instruction and comments to preclude consideration of relevant mitigating evidence offered by Parks.

Any harm caused by these comments would have been further minimized because Instruction Five (given during the penalty phase of the trial) unambiguously instructed the jury that it could consider any mitigating evidence:

> You are further instructed that mitigating circumstances, if any, *must* be considered by you.... *You are not limited in your consideration to the minimum mitigating circumstances set out herein, and you may consider any other or additional mitigating circumstances, if any, that you may find from the evidence to exist in this case. What facts or evidence that may constitute an additional mitigating circumstance is for the jury to determine.*

. . . .

(emphasis added).

Furthermore, arguments of counsel are not viewed as having the same force as jury instructions, *Boyde,* 110 S.Ct. at 1200.[6] Finally, in his closing argument at the end of the sentencing phase, the prosecutor himself made it clear that the jury could consider any mitigating evidence: "And, now the court also tells you, you can consider anything else that you want to, to mitigate the penalty of death and the term of life. You can consider anything you want to in addition to what he's told you." Tr.Vol. V at 703–04. Therefore, we cannot accept petitioner's argument that there is a reasonable likelihood that these two prosecutorial comments occurring during the voir dire portion of the trial affected the jury's understanding of Instruction Nine in such a way that it felt precluded from considering relevant mitigating evidence.

## CONCLUSION

We AFFIRM the district court's denial of Parks' petition for habeas corpus, and we VACATE our order of May 14, 1990 wherein we had ordered the state to notify this court in writing before attempting to set a new execution date for petitioner.

---

**6.** Twice during the trial, the judge made it clear that he, and not the attorneys, was in charge of presenting the law to the jury. Tr.Vol. I at 68; Tr.Vol. IV at 609.