*1191
 
 OPINION
 

 Per Curiam:
 

 A jury found Kevin Lamar Lay guilty of the first degree murder of Richard Carter with use of a deadly weapon. The State sought the death penalty and presented evidence of a single aggravating circumstance, in addition to other sentencing information. The jury found one aggravating circumstance and fixed the penalty at life without possibility of parole. The judge sentenced Lay to two consecutive life terms without possibility of parole; one life term for the murder and one life term as an enhancement for use of a deadly weapon. Lay appeals, claiming a number of errors.
 

 On June 14, 1991, a twenty-two count indictment was filed against Lay. In that indictment, Lay and two co-defendants were charged with the murder of Carter and with several unrelated crimes that had allegedly been committed over a two-year period including attempted murder, assault with a deadly weapon, battery with a deadly weapon, trafficking and possession of a controlled substance, grand larceny, robbery, aiming a firearm at a
 
 *1192
 
 human being, intimidating a witness to influence testimony, and racketeering. The racketeering counts were based on allegedly continuous illegal gang activity. Lay was a member and leader of the “Piru Bloods,” a Las Vegas gang patterned after, but not directly affiliated with, the Los Angeles Bloods. The racketeering counts were dismissed for lack of adequate evidence adduced at the grand jury proceeding. The count charging the murder of Carter was severed from the indictment and Lay was tried on that count apart from his co-defendants. The State sought the death penalty.
 

 The State introduced a number of eyewitnesses who testified that at approximately 11:30 p.m. on June 4, 1990, defendant Lay drove a white Oldsmobile Cutlass into the parking lot of the AM/ PM market at the corner of Martin Luther King Drive and Carey Avenue in North Las Vegas and shot a gun from the car window. After the shots, Carter lay on the ground bleeding and subsequently died at the hospital as the result of a gunshot wound. All of the eyewitness testimony was substantially the same, with several identifying Lay as the driver and shooter.
 

 Lay contends there was insufficient evidence adduced at trial to prove that he murdered Carter. The standard of review on appeal in a criminal case for sufficiency of evidence is whether the jury, acting reasonably, could have been convinced of the defendant’s guilt beyond a reasonable doubt by the evidence that was properly before it. Kazalyn v. State, 108 Nev. 67, 71, 825 P.2d 578, 581 (1992). This standard has also been articulated as “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Guy v. State, 108 Nev. 770, 776, 839 P.2d 578, 582 (1992). Moreover, it is exclusively within the province of the trier of fact to weigh evidence and pass on the credibility of witnesses and their testimony. Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20 (1981). In the instant case, the jury had before it sufficient evidence such that it could have been convinced beyond a reasonable doubt that Carter died from a gunshot wound and that the gun was fired by Lay.
 

 Lay argues that the direct cause of Carter’s death was negligent medical treatment rather than the gunshot wound Carter received. Even if the direct cause of Carter’s death had been negligent medical care, the gunshot wound that necessitated the medical care was a substantial factor in bringing about Carter’s death. A defendant will not be relieved of criminal liability for murder
 
 *1193
 
 when his action was a substantial factor in bringing about the death of the victim.
 
 See, e.g.,
 
 Kusmider v. State, 688 P.2d 957, 959-60 (Alaska Ct. App. 1984); People v. Roberts, 6 Cal. Rptr. 2d 276 (Cal. 1992); State v. Velarde, 734 P.2d 449 (Utah 1986). Therefore, Lay was not entitled to the requested instruction on the theory that he did not proximately cause Carter’s death.
 

 Lay also claims that there was insufficient evidence to determine who the shooter was, and that he cannot therefore be found guilty of the first degree murder of Carter. The jury had before it ample credible evidence that Lay was the shooter. There were a number of eyewitnesses, many of whom testified consistently that Lay was driving and that Lay shot a rifle through an open car window. We conclude that the jury had before it sufficient evidence to find beyond a reasonable doubt that Lay was the shooter. [Headnote 4]
 

 Lay next contends that the state made repeated, unfounded references to witness intimidation and threats, and to the general reluctance of witnesses to testify, and that these comments constituted prosecutorial misconduct requiring reversal. Lay does not argue that the judge erred in admitting the witnesses’ statements regarding these subjects, but that the prosecutor committed misconduct in seeking to elicit and in arguing evidence of witness intimidation and reluctance to testify. We note that the testimony reflected a general reluctance to testify rather than reluctance to testify as a result of threats of intimidation, and there was substantial credible evidence to support the proposition that witnesses were afraid or had been confronted.
 

 Federal courts have consistently held that the prosecution’s references to, or implications of, witness intimidation by a defendant are reversible error unless the prosecutor also produces substantial credible evidence that the defendant was the source of the intimidation.
 
 See, e.g.,
 
 United States v. Rios, 611 F.2d 1335, 1343 (10th Cir. 1979); United States v. Peak, 498 F.2d 1337, 1339 (6th Cir. 1974); United States v. Hayward, 420 F.2d 142, 147 (D.C. Cir. 1969); Hall v. United States, 419 F.2d 582, 585 (5th Cir. 1969). Federal courts have also reversed convictions where prosecutors have implied the existence of threats that “in the context of the whole record” specifically “hint[ed] of violence.”
 
 See
 
 United States v. Muscarella, 585 F.2d 242, 248-49 (7th Cir. 1978) (citing United States v. Love, 534 F.2d 87 (6th Cir. 1976));
 
 Peak,
 
 498 F.2d at 1337.
 

 We first note that although many of these references were not relevant to any issue in the case, neither were they direct references to witness intimidation by Lay. Nor was there any implication that the witnesses were reluctant to testify because they thought Lay himself might retaliate against them or that Lay had
 
 *1194
 
 threatened them. Most of the references appear, rather, to have been attempts to show the witnesses’ reluctance to testify because of the presence in the witnesses’ neighborhoods of Lay’s fellow gang members who might retaliate against them for testifying. Although these references may have been irrelevant to the examination of most of the witnesses, we conclude that the references are not misconduct requiring reversal.
 

 Lay argues, however, that the prosecutor attempted “to put gangs on trial” instead of putting Lay on trial and that this is an improper objective that was designed to distract and influence the jury and constitutes misconduct requiring reversal. We agree that this is not a proper objective, and that many of the references were simply not relevant to issues in the case beyond showing that witnesses were afraid because they lived in a neighborhood beset with gangs. However, we cannot conclude on this record that the references were intended to suggest that Lay had threatened or intimidated witnesses.
 

 In addition, at least with respect to witness Haynes, the questions about reluctance and fright were relevant because Haynes had been impeached on cross-examination when Lay asked why Haynes had told the investigating officer that he could not describe or identify Lay as the shooter. Fright or general concern for his safety could have explained to the jury why Haynes made this prior inconsistent statement.
 

 It is well established that where evidence of guilt is overwhelming, prosecutorial misconduct may be harmless error.
 
 See, e.g.,
 
 Ybarra v. State, 103 Nev. 8, 16, 731 P.2d 353, 358 (1987). Although we disapprove of some of the prosecutor’s references, we conclude that in light of the entire record, the references, even if they had risen to the level of prosecutorial misconduct, would have been harmless error.
 

 Lay argues that the prosecutor committed reversible error in delivering the following portion of closing argument:
 

 On the night of June 4th, 1990, society received a great loss and a life was taken from us. Richard Carter’s family and friends can no longer have the opportunity to see him—
 

 [OBJECTION AND OBJECTION OVERRULED],
 

 This court has expressly held that a prosecutor may comment on the loss experienced by the family of a murder victim.
 
 See
 
 Homick v. State, 108 Nev. 127, 135, 825 P.2d 600, 605 (1992) (adopting the holding of Payne v. Tennessee, 501 U.S. 808, 111 S. Ct. 2597 (1991), allowing prosecutorial comment on and witness testimony of “victim impact” evidence).
 

 
 *1195
 
 Lay also argues that the anti-sympathy instruction read to the jury at the penalty phase unconstitutionally restricted the jury’s consideration of mitigating evidence. This court has previously considered and rejected Lay’s argument.
 
 See
 
 Riley v. State, 107 Nev. 205, 215-16, 808 P.2d 551, 557 (1991); Hogan v. State, 103 Nev. 21, 25, 732 P.2d 422, 424-25 (1987); Biondi v. State, 101 Nev. 252, 257-58, 699 P.2d 1062, 1066 (1985). In addition, this court has approved the specific instruction read to Lay’s jury.
 
 See
 
 Howard v. State, 102 Nev. 572, 577-78, 729 P.2d 1341, 1344-45 (1986); Nevius v. State, 101 Nev. 238, 250-51, 699 P.2d 1053, 1060-61 (1985). So long as a jury is instructed to consider the mitigating circumstances placed before it, it is not error to instruct the jury not to be influenced by sympathy.
 
 [1]
 

 Lay next contends that the district court erred in admitting gang affiliation evidence at the trial. Lay does not specify whether he is attacking the introduction of such evidence at the guilt phase, penalty phase, or both. Accordingly, we consider whether it was error to admit it at either stage.
 

 The state introduced, among other gang-related evidence, the following items during the guilt phase of Lay’s trial: Lay was the leader of the Piru Bloods; “Showmink,” a Piru Blood and friend of Lay, had been killed some time recently before the killing of Carter; Bloods and Crips were rival gangs; Carter was a Crip; and even seemingly minor altercations could erupt into “gang wars.” All of this evidence, as Lay virtually concedes, was offered to show motive in that it may have explained why Lay and the members of his set shot randomly at a group of young men. The prosecutor was allowed to elicit evidence of motive, but was not allowed to inquire into specific prior criminal acts of the gang at the guilt phase.
 

 NRS 48.045(2) provides that “[ejvidence of other . . . acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible ... as proof of motive . . . .” Thus, the gang-affiliation evidence was properly offered and admitted to prove motive.
 

 Lay also asserts, however, that the evidence, even if relevant
 
 *1196
 
 and probative of motive, was unfairly prejudicial and should have been excluded.
 
 See
 
 NRS 48.025, 48.035. Other state and federal courts have found gang-affiliation evidence relevant and not substantially outweighed by unfair prejudice when it tends to prove motive.
 
 See
 
 United States v. Rodriguez, 925 F.2d 1049, 1053-54 (7th Cir. 1991); United States v. Silverstein, 737 F.2d 864, 866-67 (10th Cir. 1984); People v. Dominguez, 175 Cal. Rptr. 445, 455-56, (Ct. App. 1981); People v. Connally, 481 N.Y.S.2d 432, 433 (App. Div. 1984). As stated, the evidence at issue was relevant to prove that Lay had a motive to engage in the shooting of rival gang members. We conclude that the evidence was not unfairly prejudicial.
 

 At Lay’s penalty phase, substantial evidence of his gang membership was admitted as relevant sentencing information under NRS 175.552(3), which provides that a district court judge may admit evidence of “any . . . matter which the court deems relevant to sentence, whether or not the evidence is ordinarily admissible.”
 
 [2]
 
 As part of the information offered at the penalty hearing, the state introduced extensive evidence of Lay’s gang membership and evidence pertaining to the operation of gangs. Lay now claims that his conviction should be reversed because of the introduction of this evidence.
 

 Evidence of affiliation with a particular group is only relevant at the penalty phase of a criminal trial when membership in that group is linked to the charged offense, or is used as other than general character evidence.
 
 See
 
 Dawson v. Delaware, 503 U.S. 159, 112 S. Ct. 1093 (1992); Flanagan v. State, 109 Nev. 50, 53, 846 P.2d 1053, 1055-56 (1993). Some items brought out in the penalty phase concerned prior offenses or acts committed in connection with the gang and which showed Lay had a violent disposition. This information was therefore relevant at sentencing. Other items (including photos in which Lay wore gang colors and stood in front of a graffiti wall with the number “187,” referring to the California Penal Code section for murder) were intended only to show his membership in the gang. The state introduced evidence sufficient to show that the murder was gang-related and an indiscriminate retaliation for the killing of a fellow gang member.
 

 In
 
 Dawson,
 
 the United States Supreme Court stated that evidence of group membership is admissible to show an individual’s
 
 *1197
 
 future dangerousness to society. 503 U.S. at 166, 112 S. Ct. at 1098. It illustrated this rule with the case of Barclay v. Florida, 463 U.S. 939 (1983), in which evidence that the defendant was a member of the Black Liberation Army (“BLA”) was relevant at sentencing when the evidence showed that the defendant had murdered a white woman, and that the purpose of the BLA was to indiscriminately kill white people to initiate a racial war.
 
 Dawson,
 
 503 U.S. at 166, 112 S. Ct. at 1098.
 
 See also Flanagan,
 
 109 Nev. at 52, 846 P.2d at 1055. Evidence at Lay’s trial showed that gang retaliation was commonplace at that time in Las Vegas for even the most minute transgressions upon the turf or dignity of rival gangs (including walking in rival gang turf or crossing out their graffiti). The evidence supported the state’s theory of motive — namely, that gang members engage in drive-by shootings to retaliate for the murder of a fellow gang member. Accordingly, evidence of Lay’s gang affiliation, under
 
 Dawson
 
 and
 
 Flanagan,
 
 is admissible to show Lay’s future dangerousness. Thus, we must reject Lay’s argument.
 

 Lay next claims that the prosecutor abused the grand jury system by failing to disclose exculpatory evidence to the grand jury. The exculpatory evidence allegedly concealed from the grand jury consisted of prior statements by grand jury witnesses which contradicted their grand jury testimony. Specifically, Lay claims that Ricky Lee, Newman, Stewart and Haynes all told police investigators that they could not identify the shooter, but that these same witnesses nevertheless identified Lay’s photograph at the grand jury proceeding. Only Stewart and Haynes testified at trial.
 

 Nevada law requires a prosecutor to disclose to the grand jury all exculpatory evidence, defined as that evidence “which will explain away the charge.”
 
 See
 
 NRS 172.145 (“the exculpatory evidence statute”);
 
 [3]
 
 Ostman v. District Court, 107 Nev. 563, 564-65, 816 P.2d 458, 459-60 (1991); Sheriff v. Frank, 103 Nev. 160, 164-65, 734 P.2d 1241, 1244-45 (1987). This precise question, whether a grand jury witness’ prior inconsistent statement is exculpatory evidence within the meaning of the exculpatory evi
 
 *1198
 
 dence statute, has not been addressed in Nevada. Other state courts, however, have rejected the claim that Lay advances.
 
 See, e.g.,
 
 Frink v. State, 597 P.2d 154, 165-66 (Alaska 1979) (holding that no burden on prosecutor to develop evidence for defendant by questioning witness on prior inconsistent description of assailant); Abruska v. State, 705 P.2d 1261, 1272-73 (Alaska Ct. App. 1985) (holding that only evidence which substantially tends to negate guilt is exculpatory under the statute, and prosecutor had no duty to explore prior inconsistent statements of witnesses).
 

 We conclude that the prior inconsistent statement of a witness does not “explain away [a criminal] charge” within the meaning of the exculpatory evidence statute. There are a variety of reasons why witnesses give varying statements at different stages of an investigation or proceeding. These may include a witness’ reluctance to involve him or herself in a criminal investigation or the ability of the reporter taking a later statement to develop the witness’ statement in greater detail. In addition, the loss of memory or the witness’ recollection of additional facts will cause statements to be inconsistent at different times.
 

 Although a criminal defendant is certainly entitled to impeach a witness’ credibility and testimony at trial based upon prior inconsistencies, the simple fact that a witness has contradicted himself in the past does not tend to “explain away the charge,” and therefore make the witness’ first statement “exculpatory” within the meaning of the exculpatory evidence statute. Accordingly, we reject this argument.
 

 Lay also asserts that “improper material” was introduced at the grand jury proceeding, including the fact that the state repeatedly referred to and questioned witnesses on gang activity and referred to additional security at the grand jury proceeding. He asserts that the proceeding was thereby contaminated and that the grand jury indictment should have been dismissed.
 

 Dismissal of an indictment on the basis of governmental misconduct is an extreme sanction that should be utilized infrequently. Sheriff v. Keeney, 106 Nev. 213, 216, 791 P.2d 55, 57 (1990). In order to warrant dismissal of an indictment the defendant must show substantial prejudice.
 
 Id.
 
 (citing Buzbee v. Donnelly, 634 P.2d 1244, 1255 (N.M. 1981)). Although prejudice was not defined in
 
 Keeney,
 
 we conclude a defendant shows prejudice only when there is a reasonable probability that the outcome would have been different absent the misconduct.
 
 See, e.g.,
 
 Strickland v. Washington, 466 U.S. 688, 694 (1984) (defining prejudice in the context of an ineffective assistance of counsel claim).
 

 
 *1199
 
 In the instant case, the grand jury heard overwhelming evidence to support a true bill during the grand jury proceeding, and we conclude that the information alleged to have contaminated the proceeding would not have changed that outcome. As a result, Lay cannot show prejudice sufficient to require dismissal of the indictment.
 

 Finally, Lay claims that the above errors, taken together, require reversal of his conviction because of their cumulatively negative effect on the trial. While improper comments or misconduct of a prosecutor alone may not warrant reversal of a conviction, such items, taken together with other errors at trial, may require reversal when the effect of such error and conduct is to deprive the defendant of a fair trial.
 
 See
 
 Sipsas v. State, 102 Nev. 119, 124-25, 716 P.2d 231, 235 (1986). The quantum of evidence against a defendant is a relevant consideration in determining whether cumulative error had such a prejudicial effect.
 
 Id.
 
 In the instant case, although we have determined that the prosecutor focused disproportionately on the witnesses’ reluctance to testify, we note that the eyewitness testimony and inferences to be drawn from the circumstantial evidence in this case provided overwhelming evidence of Lay’s involvement in and commission of the murder of Carter.
 

 Accordingly, we reject Lay’s contentions and affirm the judgment of conviction and sentences imposed by the trial judge.
 

 [1]
 

 Accord
 
 California v. Brown, 479 U.S. 538 (1986); Parks v. Brown, 860 F.2d 1545 (10th Cir. 1989),
 
 rev’d
 
 Parks v. Saffle, 110 S. Ct. 1257 (1990),
 
 appeal after remand,
 
 Parks v. Saffle, 925 F.2d 366 (10th Cir. 1991); Byrne v. Butler, 847 F.2d 1135 (5th Cir. 1988) (referencing Louisiana law); State v. Ramseur, 524 A.2d 188 (N.J. 1987); State v. Steffen, 509 N.E.2d 383 (Ohio 1987).
 

 [2]
 

 In addition to evidence tending to prove aggravating circumstances, which are set forth in a statutory list under NRS 233.033, a district court judge is authorized under NRS 175.552(3), to admit other relevant information that goes to sentencing.
 

 [3]
 

 NRS 172.145 provides, in relevant part:
 

 1. The grand jury is not bound to hear evidence for the defendant. It is their duty, however, to weigh all evidence submitted to them, and when they have reason to believe that other evidence within their reach will explain away the charge, they shall order that evidence to be produced, and for that purpose may require the district attorney to issue process for the witnesses.
 

 2. If the district attorney is aware of any evidence which will explain away the charge, he shall submit it to the grand jury.