MARK PRAY, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 28998

May 19, 1998                                   959 P.2d 530

*David M. Schieck*, Las Vegas, for Appellant.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Stewart L. Bell*, District Attorney, and *James Tufteland*, Chief Deputy District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

Appellant Mark Pray ("Pray") and his ex-wife, Marjorie Pray ("Marjorie"), were travelling north in an automobile on I-15 on their way to Mesquite, Nevada, when, by their own account, they noticed that an Isuzu pickup truck seemed to be following them. In an unsuccessful attempt to evade their pursuer, Pray began driving fast and executed a series of U-turns, crossing from the northbound to the southbound lanes of I-15. Finally, Pray slammed on his brakes, turned onto the median, and fired six shots from his .357 caliber revolver at the oncoming vehicle. One of the shots struck the driver of the vehicle, Peter Ghiglione, II ("Ghiglione") in the head, killing him. Pray later told the police that he believed the man following him in the Isuzu pickup was William "Bud" Baker ("Baker"). Baker had previously been in

a relationship with Marjorie. According to Pray, he had a confrontation with Baker several weeks before the shooting in which Baker had threatened him with a handgun. Pray stated that he felt that Baker was going to harm Marjorie and him.

After the shooting, Pray and Marjorie drove around for several hours, then checked into a motel in Pahrump. They then went to a bar and had several drinks. Pray and Marjorie then drove toward Las Vegas. At one point during the drive, Pray became angry and struck Marjorie, giving her a black eye. Pray told her to say that she hit her eye on the dashboard.

They later returned to the motel in Pahrump. At the motel, Pray thought that he saw one of Baker's friends, a man named Angel. Pray got his pistol out of the truck and returned to their room. Marjorie called motel security and then the police.

Officers of the Nye County Sheriff's Office arrived at the motel, and Pray informed them of his fears. Pray and Marjorie were taken into protective custody. The officers searched the area around the motel and found a person matching Angel's description. The officers soon learned that this person was Las Vegas Metropolitan Police Officer Larry Huggins, who was staying in Pahrump while participating in a police officer's golf tournament.

The police eventually questioned Pray about the Ghiglione shooting. Pray told the police that he and Marjorie were on their way to Mesquite at the time of the shooting because he had seen Baker lurking around their apartment in North Las Vegas. William Shouse ("Shouse"), who was with Pray and Marjorie at their apartment, testified that he checked outside and did not see Baker anywhere about. Shouse told Pray that Baker was not outside, but Pray did not believe him. Shouse then called Baker's residence and awakened him, ascertaining that he was, in fact, at home and not lurking near Pray's house. Shouse told Pray that Baker was at home, but still Pray refused to believe him.

Marjorie testified that she told Pray that the pickup truck was not Baker's pickup truck; it was too small. She also testified that she never saw the face of the man in the pickup truck and never saw any weapon in the man's possession. Neither the man who subsequently discovered Ghiglione's body nor the police found any weapon in the truck.

Pray and Marjorie admitted that prior to leaving their apartment, they had been smoking crack cocaine and drinking. Shouse also testified that Pray was "tweaking" quite a bit at this time. Shouse described "tweaking" as a crack-induced state of nervous paranoia. Shouse said that "tweaking" is a sign that one has smoked too much crack cocaine. Marjorie testified that Pray was a frequent "tweaker."

At trial, Pray claimed justifiable homicide as a defense. He was

found guilty of first degree murder with use of a deadly weapon and sentenced to life with the possibility of parole.

## DISCUSSION

First, Pray contends that the district court erred in allowing Ghiglione's mother to sit through the trial in violation of the exclusionary rule, NRS 50.155.[1] However, we have held that the exclusionary rule does not apply to witnesses who testify only during the penalty phase of the trial. Witter v. State, 112 Nev. 908, 921 P.2d 886 (1996). In this case, Ghiglione's mother did not testify until the penalty phase of the trial. Accordingly, this contention is without merit.[2]

Second, Pray contends that the district court failed to apply the "totality of the evidence" standard in determining whether to grant Pray's motion for a new trial. Pray bases his contention on the fact that at no time during the lengthy argument on the motion for a new trial did the district court indicate that it was applying a totality of the evidence test. However, "trial judges are presumed to know the law and to apply it in making their decisions." Jones v. State, 107 Nev. 632, 636, 817 P.2d 1179, 1181 (1991). In this case, the record shows that the district court heard the evidence presented by both the defense and the State during the argument on the motion. We conclude that Pray failed to show any reason why the presumption of regularity should not be applied in this case. Accordingly, we conclude that this issue is without merit.

Third, Pray argues that insufficient evidence existed to convict him of first degree murder because "there is nothing to support or even suggest that [he] meant to kill anyone when the shots were fired in what he believed was an attempt to prevent injury to himself or Marjorie." Pray further contends that the "keystone cop nature of the entire chase mitigates against the actions being first degree murder."

---

[1]NRS 50.155(1) provides: "Except as otherwise provided in subsections 2 and 3, at the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and he may make the order of his own motion."

[2]Pray also contends that it was error for the district court to allow Ghiglione's mother to be present in the courtroom during the guilt phase of the trial because of the emotional impact her presence might have on the jury. It does not appear that there was anything unusual about her behavior in the courtroom, and Pray cites no authority for the proposition that family members of a victim may not observe trial proceedings. Therefore, we need not consider this argument on appeal. See Cunningham v. State, 94 Nev. 128, 130, 575 P.2d 936, 937 (1978) (holding that contentions unsupported by legal authority need not be considered on appeal).

It is well settled that this court will not overturn a criminal conviction for lack of sufficient evidence so long as "the jury, acting reasonably, could have been convinced of the defendant's guilt beyond a reasonable doubt by the evidence that was properly before it." Lay v. State, 110 Nev. 1189, 1192, 886 P.2d 448, 450 (1994).

In the present case, the State presented evidence that Pray turned his vehicle around on the highway median and fired six shots from a large caliber handgun at the driver's compartment of Ghiglione's oncoming vehicle. We conclude that from this evidence, a reasonable jury could have found the intent required for first degree murder.

Fourth, Pray contends that his conviction should be overturned because of prosecutorial misconduct. We have long held that the failure to make timely objections and to seek corrective instructions during trial waives the appellant's right to raise the issues during appeal. *See*, *e.g.*, Parker v. State, 109 Nev. 383, 391, 849 P.2d 1062, 1067 (1993); Dearman v. State, 93 Nev. 364, 368, 566 P.2d 407, 409 (1977) (holding that "[i]t is well established that improper remarks made by the prosecutor in closing argument will not be considered on appeal if not objected to at the time of trial"). Here, Pray objected to none of the alleged instances of misconduct at trial. Moreover, Pray does not show that the district court committed plain error, nor does he raise contentions of constitutional dimension. *See, e.g.*, Williams v. State, 113 Nev. 1008, 945 P.2d 438 (1997). Therefore, we will not consider this issue on appeal.

We conclude that none of the issues which Pray raises on appeal has merit. Accordingly, we affirm the judgment of the district court.[3]

---

[3]Pray also argues that the jury instructions regarding deliberation and implied malice were constitutionally infirm. However, we have previously rejected both these contentions. *See* Doyle v. State, 112 Nev. 879, 900, 921 P.2d 901, 915 (1996) (reaffirming the holding of Powell v. State, 108 Nev. 700, 838 P.2d 921 (1992)).