1998-NMSC-044

972 P.2d 1143

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Marcos C. LUCERO, Defendant–
Appellant.**

**No. 23,868.**

Supreme Court of New Mexico.

Nov. 25, 1998.

Rehearing Denied Dec. 18, 1998.

D. Eric Hannum, Hannum & Evans, Albuquerque, for Appellant.

Hon. Tom Udall, Attorney General, Steven S. Suttle, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

SERNA, Justice.

{1} Defendant–Appellant Marcos Lucero was convicted of first degree murder, aggravated battery, and tampering with evidence, and sentenced to life imprisonment plus five and a half years. Defendant appeals to this Court pursuant to Rule 12–102(A)(1) NMRA 1998 (appeal from life sentence taken to the Supreme Court), alleging that the trial court erred by: (1) denying his proffered jury instructions on self defense and defense of others; (2) refusing to admit into evidence the State's charging instrument filed against a witness; (3) allowing the State to redact portions of Defendant's recorded statement; (4) failing to dismiss the indictment because the State did not present allegedly exculpatory evidence to the grand jury; (5) allowing the State to illustrate applicable law in an impermissible manner before the grand jury; and (6) allowing the State to amend the indictment to add the charge of depraved mind murder and in finding that Defendant had no right to a peremptory excusal of the trial court judge. We affirm Defendant's convictions.

## FACTS AND BACKGROUND

{2} On the afternoon of November 2, 1995, Defendant was involved in a gun battle in Albuquerque that resulted in the death of Lynnae Lucero (no relation to Defendant) and the wounding of Clifton Montoya. Earlier that day, Defendant claims that Eric Devine drove by him and challenged him by making gang hand signs as he was walking down Panmunjon Road. Defendant responded with his own gang hand signs, and alleges that Devine then turned the car around and shot at him with a handgun. Devine owned a .22 caliber gun. Police found three .22 caliber shell casings on Panmunjon Road. Defendant then proceeded to Carlos Garcia's house. Carlos Garcia's mother testified that Defendant came to her home and was "hysterical," stating that Devine and "two other guys" were shooting at him. She testified that he joined Carlos and Lorenzo Lucero (no relation to Defendant) in Carlos' room.

{3} Defendant, Carlos, and Lorenzo were present at the house for a short while, and then walked to a nearby gas station to use the pay phone to call an unknown person for a gun. An unidentified person brought Defendant a nine millimeter semi-automatic gun. The three of them returned to the neighborhood, walking towards Carlos' house, which is located across the street from Devine's grandmother's house. Devine, Lynnae, and Clifton came out of Devine's Grandmother's house and began walking down the street. Defendant, Carlos, and Lorenzo fol-

lowed Devine, Lynnae, and Clifton down the street to a vacant lot.

{4} Defendant stated that he and his friends stopped at the edge of the lot, while Devine, Lynnae, and Clifton continued across. Defendant contended that Devine was looking back towards him, and at this point, Defendant raised his gun and fired one shot into the air. He claimed that about five seconds passed, and then Devine pulled out his gun and began firing towards Defendant. Defendant shot at least eleven bullets at the other group, killing Lynnae and wounding Clifton. Three neighbors testified that they heard only consecutive shots fired, without the pause described by Defendant.

## STANDARD OF REVIEW

{5} The trial court's rejection of Defendant's submitted jury instructions is reviewed by this Court de novo, because it is closer to a determination of law than a determination of fact. *See generally State v. Attaway*, 117 N.M. 141, 145, 870 P.2d 103, 107 (1994). "It is basic that a defendant is entitled to have his [or her] theory of the case submitted to the jury under proper instructions where the evidence supports it." *State v. Benavidez*, 94 N.M. 706, 708, 616 P.2d 419, 421 (1980). "Failure to give an instruction which is supported by evidence is not harmless error." *State v. Diaz*, 121 N.M. 28, 33, 908 P.2d 258, 263 (Ct.App.1995). For questions regarding the admissibility of evidence, we review the trial court's rulings for an abuse of discretion. *State v. Ross*, 122 N.M. 15, 20, 919 P.2d 1080, 1085 (1996).

## DISCUSSION

### DID THE TRIAL COURT ERR BY DENYING DEFENDANT'S PROFFERED JURY INSTRUCTIONS FOR SELF DEFENSE AND DEFENSE OF OTHERS?

{6} Defendant argues that the trial court erred by denying his proffered jury instructions on self defense and defense of others. "An instruction on a claim of self defense or defense of another should be given if there is any evidence, even slight evidence, to support the claim." *State v. Duarte*, 121 N.M. 553, 556, 915 P.2d 309, 312 (Ct.App.), *cert.*

*denied*, 121 N.M. 444, 913 P.2d 251 (1996). "The requirements of self defense are (1) an appearance of immediate danger of death or great bodily harm to the defendant, (2) the defendant was in fact put in fear by the apparent danger, and (3) a reasonable person in the same circumstances would have reacted similarly." *State v. Abeyta*, 120 N.M. 233, 239, 901 P.2d 164, 170 (1995). "[W]here an innocent bystander is accidentally killed during the attempt to defend oneself, the doctrine of self-defense provides a defense against the unintended killing." *Id.* at 243, 901 P.2d at 174.

{7} However, "the claim of self-defense may fail if the defendant was the aggressor or instigator of the conflict." *Id.* at 239, 901 P.2d at 170. "The rule is well established in this jurisdiction that a defendant who provokes an encounter, as a result of which he [or she] finds it necessary to use deadly force to defend himself [or herself], is guilty of an unlawful homicide and cannot avail himself [or herself] of the claim that he [or she] was acting in self-defense." *State v. Chavez*, 99 N.M. 609, 611, 661 P.2d 887, 889 (1983) (holding that a defendant, convicted of felony murder for killing a store patron during an armed robbery, was not entitled to self defense claim). "Self defense is not available to the defendant if he [or she] [started the fight] unless: [1. The defendant was using force which would not ordinarily create a substantial risk of death or great bodily harm; and 2. [victim] responded with force which would ordinarily create a substantial risk of death or great bodily harm]...." UJI 14–5191 NMRA 1998.

{8} Because Defendant followed Devine, drew his weapon, and fired into the air, he is the instigator of the conflict. Before Defendant drew his gun, there was no appearance of immediate danger of death or great bodily harm to him by Devine. Thus, the question is whether Defendant's discharge of a gun into the air created a substantial risk of death or great bodily harm to preclude him from receiving an instruction for self defense or defense of others. We hold that it does.

{9} Defendant argues that firing a gun into the air would not ordinarily create a substantial risk of death or great bodily harm, and that Devine responded with deadly force; thus, Defendant had a right to defend himself and his companions. District Judge Knowles noted:

> Now, the problem I have with the self-defense instruction is saying that if I fire a gun in the air, getting your attention and to scare you, that's not some form of aggravated assault, and saying that this is not the use of force which creates a substantial risk of death or great bodily harm, and I am firing the gun off to scare you. That bothers me a lot. I am trying to figure out a scenario where that's not the use of force which would create the risk of substantial bodily harm and where I can find [that] reasonable minds can differ as to what was being done here.

We agree with his assessment. Defendant obtained a nine millimeter semi-automatic gun, followed Devine, Lynnae, and Clifton down a street to a vacant lot, brandished a deadly weapon, and fired it into the air. These provocative acts instigated a confrontation in which one person died and another was wounded. This show of potentially deadly force created a substantial risk of death or great bodily harm to which Devine responded with equally deadly force. The trial court did not err in refusing to give Defendant's self defense instruction.

## DID THE TRIAL COURT ERR BY REFUSING TO ADMIT THE STATE'S CHARGING INSTRUMENT?

{10} The State filed a petition charging Devine with regard to the events occurring on November 2, 1995. Defendant claims that by this action, the State pleaded that the facts alleged in the petition were true. He asserts that his due process rights to a fundamentally fair trial were deprived when the trial court ruled that the statement was inadmissible under Rule 11–403 NMRA 1998 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."). The trial court found that the probative value would be substantially outweighed by the danger of unfair prejudice, confusion and misleading the jury.

{11} Defendant suggests that the petition contained "implicit admissions that Eric Devine was the aggressor in the gun battle that lead [sic] to the death of Lynnae Lucero," and that the trial court abused its discretion by finding that the prejudicial effect outweighed its probative value. "The determination of probative value and other relevant considerations must be left to the sound discretion of the trial judge. The essence of a discretionary decision is the balancing of the probative value of the evidence against its capacity to prejudice." *State v. Bowman,* 104 N.M. 19, 22, 715 P.2d 467, 470 (Ct.App. 1986) (citation omitted). We hold that the trial court did not abuse its discretion by refusing to admit the petition.

{12} Even if we held that the trial court erred by refusing to admit the petition, the error would be harmless, because Defendant's allegation that Devine was the instigator of the altercation leading to Lynnae's death was already before the jury. Lorenzo Lucero testified that Defendant told him that Devine had shot at him earlier that afternoon. Lorenzo testified that Defendant "fired once in the air" while Devine was looking towards them. He then testified that Devine "pulled out his gun and started shooting" at them. Thus, the evidence within the petition was cumulative to evidence which was before the jury, and error, if there was any, was harmless. *See State v. Woodward,* 121 N.M. 1, 10, 908 P.2d 231, 240 (1995) ("The erroneous admission of cumulative evidence is harmless error because it does not prejudice the defendant.").

## DID THE TRIAL COURT ERR WHEN IT ALLOWED THE STATE TO REDACT DEFENDANT'S RECORDED STATEMENT?

{13} The State introduced a tape recording and transcript of a phone conversation between Defendant, Carlos, and Lorenzo. The State wished to redact a portion of the recording in which Defendant stated that he "blacked out" during the shooting. Defendant objected, citing to Rule 11–106 NMRA 1998, which states that "[w]hen a writing or

recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." The trial court overruled Defendant's objection, and found that, under Rule 11–403, the statement created a potential for confusing the jury which substantially outweighed its probative value.

{14} Defendant argues that his statement that he "blacked out" is relevant to his mental state and intent at the time of the shooting. While Defendant acknowledges that he was not raising an insanity defense or asserting that he lost consciousness, he believes that the jury could understand his remark "as a kind of vernacular, showing that [he] did not have the requisite intent for first degree murder. Precisely what it meant was a matter for the jury to decide." However, when offered for this limited purpose, its relevance is considerably diminished.

■ {15} We discussed Rule 11–106 in *State v. Sanders*, 117 N.M. 452, 458, 872 P.2d 870, 876 (1994). "The rule applies only to other parts of a document that are relevant and that illuminate the parts of the document already admitted." *Id.* In *Sanders*, the defendant requested that the court admit all of his 22–page statement, and we held that because he made no showing that the entire document was relevant, the trial court did not abuse its discretion in refusing to admit it. *Id.* "There is no rule that either the entire document or none of it must be admitted under Rule [11–]106." *Id.* While there may be some merit to Defendant's contention that the statement is relevant, we cannot conclude the trial court abused its discretion when it found that its probative value was substantially outweighed by its potential to confuse the jury.

## WAS DEFENDANT'S RIGHT TO DUE PROCESS VIOLATED BY THE STATE'S CONDUCT IN FAILING TO PRESENT TO THE GRAND JURY DEVINE'S STATEMENTS IDENTIFYING CARLOS GARCIA AS THE GUNMAN?

■ {16} Defendant contends that the trial court erred when it failed to dismiss the first grand jury indictment because the State did not present Devine's statement that Carlos Garcia, rather than Defendant, fired the shots that killed Lynnae and wounded Clifton. Defendant relies on NMSA 1978, § 31–6–11(B) (1981), which requires the prosecuting attorney to present "evidence that directly negates the guilt of the target where he [or she] is aware of such evidence." The trial court denied Defendant's motion to dismiss the indictment, finding no "reasonable probability" of a different outcome following application of the standard articulated in *Lay v. State*, 110 Nev. 1189, 886 P.2d 448, 453 (1994) (concluding that "a defendant shows prejudice only when there is a reasonable probability that the outcome would have been different absent the misconduct.").

{17} "Generally, courts have been most cautious in invalidating indictments for alleged grand jury misconduct of the prosecutor." *Buzbee v. Donnelly*, 96 N.M. 692, 696–97, 634 P.2d 1244, 1248–49 (1981). "Dismissal has been limited to those few instances where the prosecutor has clearly abused the grand jury process." *Id.* In *Buzbee*, we held that Section 31–6–11(B) "means the prosecutor shall present evidence, that would be admissible at trial, which directly negates the guilt of the target." *Id.* at 699, 634 P.2d at 1255. "[S]ubstantial prejudice to the defendant must be demonstrated before the province of the independent grand jury is invaded." *Id.* at 703, 634 P.2d at 1259.

In order to be entitled to a dismissal of an indictment based upon a claim that the state failed to present exculpatory evidence to the grand jury as required by Section 31–6–11(B), a defendant must satisfy a three-pronged test. First, defendant must establish demonstrable prejudice resulting from the acts or omissions of the prosecutor. Second, the evidence which is claimed to be exculpatory must constitute evidence directly negating the guilt of defendant.... Third, the evidence claimed to be exculpatory must be evidence which would be legally admissible at trial.

*State v. Hewitt*, 108 N.M. 179, 182, 769 P.2d 92, 95 (Ct.App.1988) (citations omitted).

{18} Defendant argues that the second and third prong of the *Hewitt* test were "obviously satisfied by the omission of an eyewitness account identifying someone else as the shooter." While Defendant agrees that the first prong is properly analyzed by the standard in *Lay*, he asserts that even if we conclude that the other evidence presented to the grand jury was sufficient to decide that there was no substantial probability of a different outcome, "the flagrancy of the omission required the dismissal of the indictment."

{19} The prosecutor "is invested with wide discretion as to the selection and presentation of evidence." *Hewitt*, 108 N.M. at 183, 769 P.2d at 96. The State notes that, among other evidence, it already had Defendant's own statement that he fired shots at Devine, Lynnae, and Clifton. Defendant also admits that "there was substantial evidence that, considered in a vacuum, could have supported a grand jury's indictment of" Defendant. As the trial court correctly determined, Defendant fails on the first prong of the test, because he has not presented demonstrable prejudice by showing a substantial probability of a different outcome. Thus, the trial court did not err by denying Defendant's motion to dismiss the indictment.

## DID THE STATE IMPERMISSIBLY COMPROMISE THE INTEGRITY OF THE GRAND JURY PROCEEDING BY ALLOWING A POLICE OFFICER TO DESCRIBE DEPRAVED MIND MURDER?

{20} Defendant must show "demonstrable prejudice" by prosecutorial conduct in order to warrant dismissal of an indictment. *Hewitt*, 108 N.M. at 184, 769 P.2d at 97. "[D]efendant must show the conduct complained of infringed upon the independent judgment of the grand jurors and that the result would have been different had the conduct in question not occurred." *Id.* In *Hewitt*, the Court of Appeals noted that "[p]erjury, deceit, or malicious overreaching that subverts a grand jury proceeding constitutes conduct that infringes upon the independent judgment of the jurors." *Id.*

{21} Defendant contends that the prosecutor, by asking a police detective to provide an example of depraved mind murder, "impermissibly intruded upon the traditionally independent role of the grand jury." The detective described depraved mind murder as when

> a subject that fires into, for example, a crowd of people if there's more than one person. . . . if that person sees the other people there, knows its likely that somebody else may get shot, takes a chance, and just fires into a group of people anyway. And . . . in this case someone died as a result of that.

*See* NMSA 1978, § 30–2–1(A)(3) (1994) ("Murder in the first degree is the killing of one human being by another . . . by any act greatly dangerous to the lives of others, indicating a depraved mind regardless of human life."). The trial court concluded that there was no reasonable probability of a different outcome, and thus, no actual prejudice to Defendant by the detective's statements. "Statements by a prosecutor to the grand jury explaining the law . . . are proper so long as the statements are not in conflict with the charge given to the grand jury by the court . . . or are not otherwise incorrect statements of the law or improper." *Hewitt*, 108 N.M. at 184, 769 P.2d at 97 (citations omitted).

{22} Defendant does not appear to contend that the example given by the detective was inaccurate; rather, he asserts that it was too similar to the present case, and thus impermissibly intruded upon the independent role of the grand jury. As we stated previously, dismissal of a grand jury indictment is limited to cases of clear prosecutorial misconduct of the grand jury process. *See Lay*, 886 P.2d at 453 ("Dismissal of an indictment on the basis of governmental misconduct is an extreme sanction that should be utilized infrequently."). We have previously noted that second degree murder may be distinguished, in part, from depraved mind murder by "the number of persons subjected to the risk of death." *State v. Brown*, 1996–NMSC–073, ¶ 14, 122 N.M. 724, 931 P.2d 69. Additionally, the Court of Appeals has stated that depraved mind murder may be illustrated as "shooting into a crowd." *State v. Johnson*, 103 N.M. 364, 368, 707 P.2d 1174, 1178 (Ct.

App.1985). The grand jury received appropriate advice regarding the definition of depraved mind murder. The fact that the shooting in this case approximates the prototypical example of depraved mind murder cannot be said to prejudice Defendant. We agree with the trial court's finding that there is no reasonable probability of a different outcome, and thus no demonstrable prejudice to Defendant.

## DID THE TRIAL COURT ERR BY FINDING THAT DEFENDANT HAD NO RIGHT TO A PEREMPTORY EXCUSAL OF JUDGE KNOWLES AND BY ALLOWING THE STATE TO AMEND THE INDICTMENT?

{23} The State moved to amend the original indictment to add the alternative theory of depraved mind murder against Defendant. Defendant asserts that the trial court, by allowing the State to amend the indictment against him, deprived him of his right to a peremptory disqualification of the assigned judge. Defendant relies upon NMSA 1978, § 38-3-9 (1985) (peremptory challenge to a district judge) and Rule 5-106(C) NMRA 1998 (procedure for excusing a district judge). The trial court ruled that the new indictment was not a new charge, under Rule 5-204(A) NMRA 1998, which states in part that "[t]he court may at any time prior to a verdict cause the ... indictment ... to be amended in respect to any such ... omission ... if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

■ {24} Defendant contends that depraved mind murder constitutes a different offense requiring proof of an additional fact which is not required for willful and deliberate murder. We disagree. The State's pretrial amendment of Defendant's indictment did not add a different offense, but rather added an alternative theory of first degree murder. *See Nance v. State*, 323 Ark. 583, 918 S.W.2d 114, 121 (1996) ("We have recently ruled that pretrial amendment of an information that charged capital murder on the basis of felony murder to add, as an alternative, the charge of capital murder on the basis of premeditated and deliberated purpose, does not change the nature of the crime

charged...."); *Hightower v. State*, 901 P.2d 397, 400 (Wyo.1995) (rejecting a defendant's claim that adding premeditated first degree murder to original charge of felony murder was in error).

■ {25} Depraved mind murder, as an alternative theory of first degree murder, is not a different offense. Substantial rights of Defendant were not prejudiced by the addition of depraved mind murder. Defendant was placed on notice of the depraved mind murder charge, and was thus not prejudiced by the amendment. Accordingly, Defendant was not entitled to an additional peremptory challenge of the trial court judge.

## CONCLUSION

{26} We conclude that the trial court did not err by denying Defendant's proffered jury instructions on self defense and defense of others, by refusing to admit the State's charging instrument filed against Devine, or by allowing the State to redact portions of Defendant's recorded statement. We further hold that the trial court did not err by failing to dismiss the indictment because the State did not present Devine's statement identifying Carlos Garcia as the gunman to the grand jury, or because the State illustrated depraved mind murder for the grand jury. Lastly, the trial court did not err by finding that Defendant had no right to a peremptory excusal and by allowing the State to amend the indictment to add depraved mind murder. Defendant's convictions are affirmed.

{27} **IT IS SO ORDERED**

FRANCHINI, C.J., BACA, MINZNER and McKINNON, JJ., concur.