This decision was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of non-precedential dispositions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date:  November 9, 2015**

**STATE OF NEW MEXICO,**

　　Plaintiff-Appellee,

v.　　　　　　　　　　　　　　　　　　　**NO. S-1-SC-34817**

**DANNY STANFIELD,**

　　Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**George P. Eichwald, District Judge**


Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant


Hector H. Balderas, Attorney General
Elizabeth Ann Ashton, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**DANIELS, Justice.**

{1}     A grand jury indicted Defendant Danny Stanfield on charges of first-degree murder and attempted first-degree murder. After finding by clear and convincing evidence that he had committed the crimes, the district court ordered him detained by the New Mexico Department of Health because he was dangerous but incompetent to stand trial. He appeals from the order of commitment, arguing that there was insufficient evidence to support the district court's determination. We affirm Defendant's commitment by nonprecedential decision. *See* Rule 12-405(B)(2) ("The appellate court may dispose of a case by nonprecedential order, decision or memorandum opinion . . . [where] [t]he presence or absence of substantial evidence disposes of the issue . . . .").

## I.     BACKGROUND

{2}     On October 23, 2009, Sonny Jim and Fernando Begay were on Wayne Johnson's property in San Rafael, New Mexico. They were putting away tools after taking down a barbed-wire fence when they were confronted by Defendant, who was a tenant on Johnson's property. Defendant began shouting at Jim, and then got back

2

in his truck and drove toward his trailer. When he returned shortly, a gun holster containing a single-action revolver was attached to his waist.

{3}     With the gun out, Defendant attempted to handcuff Jim. Jim called 911 and told the dispatcher, "'He's got a gun on me.'" Defendant grabbed the phone and threw it, disconnecting the call, and tried again to place Jim in handcuffs. When Jim resisted, Defendant began shooting.

{4}     Defendant shot at Jim eight times. Six of the bullets entered Jim's body, two through his back. Because Defendant used a single-action revolver, he had to pull back the hammer, repoint the gun, and pull the trigger with each shot. Jim was unarmed. Upon shooting all six of the revolver's rounds, Defendant would have needed to physically push each shell out of its chamber one by one and reload. Although Jim had a gun in his truck, it was buried under a pile of his belongings and was not visible.

{5}     After shooting Jim, Defendant turned to Johnson. Johnson reached for his gun, but Defendant shot him four times. Johnson was found holding a Derringer gun that contained one intact bullet and one spent casing, but all ten projectiles and eleven shell casings found at the scene or recovered by the Office of the Medical Investigator were from Defendant's gun. Johnson's body was found in a fetal position.

{6}     Defendant pointed his gun at Begay after he shot Jim and Johnson. Begay

3

started running, and Defendant began firing at him. Begay called 911 and watched as deputies came up the road. Officer Lister, the first to arrive on the scene, asked Defendant if he was the shooter. Defendant at first denied shooting Jim and Johnson, but when asked again stated, "'You're damn right I did.'" Defendant said, "'They were stealing my property. Damn right. I shot him in self-defense.'"

**{7}** Defendant was arrested and indicted on two counts of first-degree murder and one count of attempt to commit first-degree murder. After finding in February 2011 that Defendant was not competent to stand trial and was dangerous, the district court entered an order of commitment for treatment to attain competency.

{8} Three years later, in February 2014, the district court found that Defendant remained dangerous, that he was not making substantial progress towards competency, and that there was not a substantial probability that Defendant would become competent to stand trial within nine months. Based on those findings and in accordance with the New Mexico Mental Illness and Competency Code, NMSA 1978, Sections 31-9-1 to -2 (1988, as amended through 1999), the district court then held an evidentiary hearing in May 2014 to determine the sufficiency of the evidence against Defendant. *See* § 31-9-1.4 (providing that "any time the district court determines that there is not a substantial probability that the defendant will become competent to proceed in a criminal case within a reasonable period of time not to exceed nine

4

months from the date of the original finding of incompetency, the district court may . . . hear the matter pursuant to Section 31-9-1.5 within three months if the defendant is charged with a felony that involves the infliction of great bodily harm on another person [or] the use of a firearm . . . ."); § 31-9-1.5 (providing that a hearing to determine the sufficiency of the evidence relevant to the defendant's guilt shall be held and that "[i]f the district court finds by clear and convincing evidence that the defendant committed a felony that involves the infliction of great bodily harm on another person [or] the use of a firearm . . . and enters a finding that the defendant remains incompetent to proceed and remains dangerous[,] . . . the defendant shall be detained by the department of health in a secure, locked facility [and] shall not be released from that secure facility except pursuant to an order of the district court which committed him or upon expiration of the period of time equal to the maximum sentence to which the defendant would have been subject had the defendant been convicted in a criminal proceeding . . . .").

{9}     After finding by clear and convincing evidence that Defendant had, with deliberate intention, taken the lives of Jim and Johnson and attempted to take the life of Begay, the district court committed Defendant to the custody of the New Mexico Department of Health, pursuant to Section 31-9-1.5(D), until further order of the court, not to exceed two consecutive terms of life imprisonment plus an additional

5

nine years, the period of time equal to the maximum sentence to which Defendant would have been subject had he been convicted at trial. Defendant appeals the commitment order, arguing that there was insufficient evidence to rebut his claim of self-defense or to establish that he acted with deliberate intent to kill.

## II.    DISCUSSION

{10}    Criminal commitment requires the State to prove by clear and convincing evidence that Defendant committed the acts charged. Section 31-9-1.5(D). When reviewing the sufficiency of the evidence to support an order of commitment, we determine whether substantial evidence exists so that "a rational fact finder could find that the State's evidence 'instantly tilt[ed] the scales in the affirmative when weighed against the evidence in opposition.'" *State v. Adonis*, 2008-NMSC-059, ¶ 26, 145 N.M. 102, 194 P.3d 717 (alteration in original) (citation omitted). Evidence is substantial when it is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829. To prove first-degree deliberate murder, the State was required to demonstrate that Defendant killed Jim and Johnson and attempted to kill Begay without lawful justification or excuse and with the deliberate intention to take away their lives. *See* NMSA 1978, § 30-2-1(A)(1) (1994) ("Murder in the first degree is the killing of one human being by another without lawful justification or excuse . . . by

6

any kind of willful, deliberate and premeditated killing.").

{11} Defendant argues first that the shootings were justified because he was acting in self-defense and that the State must disprove this theory by clear and convincing evidence. Self-defense requires that "(1) the defendant was put in fear by an apparent danger of immediate death or great bodily harm, (2) the killing resulted from that fear, and (3) the defendant acted reasonably when he or she killed." *State v. Rudolfo*, 2008-NMSC-036, ¶ 17, 144 N.M. 305, 187 P.3d 170 (internal quotation marks and citation omitted). The State must prove the absence of self-defense when a defendant has presented sufficient evidence of each element to support the theory that a killing was justified. *State v. Parish*, 1994-NMSC-073, ¶ 16, 118 N.M. 39, 878 P.2d 988 ("The defendant's only obligation is to introduce evidence that will raise in the minds of the jurors a reasonable doubt about the matter.").

{12} Defendant confronted Jim and Begay, left to retrieve his weapon, and returned to reinitiate the confrontation. As the instigator of the conflict, he cannot justify his actions by claiming self-defense unless he was using nondeadly force or unless he tried to stop the fight at which point the victim became the aggressor. UJI 14-5191 NMRA; *State v. Lucero*, 1998-NMSC-044, ¶ 7, 126 N.M. 552, 972 P.2d 1143. The evidence demonstrates that Jim was unarmed. Johnson reached for his gun only after Defendant had already killed Jim and then turned to begin firing at Johnson. Begay

7

was running away as Defendant shot at him.

{13} Self-defense is unavailable here, where Defendant initiated the confrontation, no evidence suggests that he then tried to stop the fight or that the victims became the aggressors, and Defendant has not demonstrated that he acted reasonably out of fear for his personal safety. *See State v. Swick*, 2012-NMSC-018, ¶¶ 64-65, 279 P.3d 747 (holding that an instruction on self-defense was not required when there was no evidence that the defendant had been motivated by fear or, assuming such fear, had acted reasonably); *Rudolfo*, 2008-NMSC-036, ¶ 17 (stating that while the presence of danger and actual fear are measured subjectively, the killing in reaction to the perceived danger must be objectively reasonable). Where the evidence does not put self-defense at issue, its absence is not an essential element that the State must prove. *State v. Sutphin*, 2007-NMSC-045, ¶¶ 21-22, 142 N.M. 191, 164 P.3d 72.

{14} Defendant's attempt to handcuff Jim and his statements immediately following the shooting suggest that he was reacting to a perceived threat to his property, not to his person. It is well-settled that deadly force may not be used in the defense of property other than to prevent the commission of a felony in the home. *See State v. Boyett*, 2008-NMSC-030, ¶ 15, 144 N.M. 184, 185 P.3d 355 ("Defense of habitation has long been recognized in New Mexico. It gives a person the right to use lethal force against an intruder when such force is necessary to prevent the commission of a felony

8

in his or her home." (citation omitted)); *State v. McCracken*, 1917-NMSC-029, ¶¶ 8-10, 22 N.M. 588, 166 P. 1174 ("'While the law justifies the taking of life when necessary to prevent the commission of a felony, one cannot defend his property, other than his habitation, to the extent of killing the aggressor for the mere purpose of preventing a trespass.'" (citation omitted)). A citizen's arrest, although allowed under certain circumstances, must be objectively reasonable and use no more force than is necessary. *See State v. Johnson*, 1996-NMSC-075, ¶ 18, 122 N.M. 696, 930 P.2d 1148.

**{15}** No evidence supports Defendant's argument that he was in fear for his life, and accordingly the district court did not err in rejecting his claim of self-defense.

**{16}** Defendant argues next that, even if the killings and attempted killing were not justified, the State failed to prove first-degree murder because it presented no evidence that Defendant deliberated before shooting. Deliberate intention is not a rash impulse, and, although it may be arrived at quickly, it must involve careful thought and the weighing of considerations for and against an action. UJI 14-201 NMRA. "A deliberate intention is rarely subject to proof by direct evidence and often must be inferred from the circumstances." *State v. Astorga*, 2015-NMSC-007, ¶ 60, 343 P.3d 1245.

**{17}** In *Adonis*, we reversed an order of commitment for first-degree murder because

there was insufficient evidence of deliberation. 2008-NMSC-059, ¶ 26. The defendant came out of an apartment and rapidly fired several shots, killing the victim who had parked in his space. *Id.* ¶ 4. The defendant suffered from paranoid schizophrenia but kept to himself and rarely bothered his neighbors. *Id.* ¶ 2. The victim and others regularly parked in his parking spot without incident. *Id.* ¶ 3. After the shooting, he said, "'[T]hat will teach this guy a lesson not to park in my place no more.'" *Id.* ¶ 4. We concluded that while this evidence demonstrated an intentional killing, it did not prove premeditation or deliberation. *Id.* ¶¶ 20-26.

{18}     In contrast, Defendant did not shoot Jim on rash impulse when first confronting him. He initiated the confrontation, left to retrieve his weapon, and returned with the gun. Evidence that a defendant has taken steps to arm himself supports an inference of deliberation. *See State v. Begay*, 1998-NMSC-029, ¶¶ 45-46, 125 N.M. 541, 964 P.2d 102 (recognizing the fact that the defendant had a knife as evidence to uphold a finding of deliberation). This evidence alone may not be enough to infer that Defendant deliberated, *see State v. Taylor*, 2000-NMCA-072, ¶ 22, 129 N.M. 376, 8 P.3d 863 (concluding that although the retrieval of a weapon provided an opportunity to deliberate, alone it did not prove that the defendant "actually did so"), but the facts of this case provide additional support.

{19}     Defendant started shooting after Jim resisted the handcuffs, and he shot Jim six

times, including twice in the back, with a single-action revolver that required him to aim and pull the trigger each time. He individually ejected each shell, reloaded, and shot Johnson four times, killing him, before shooting at Begay who was running away. When asked if he had shot the victims, he said, "You're damn right I did." Deliberate intent can be inferred from multiple injuries, prolonged attacks, unarmed victims, and a defendant's own statements. *See State v. Duran*, 2006-NMSC-035, ¶¶ 8-11, 140 N.M. 94, 140 P.3d 515 (holding that a prolonged struggle, a large number of wounds, and the defendant's statement after the killing that he had "'straight up murdered some bitch'" supported a rational inference of deliberation); *State v. Sosa*, 2000-NMSC-036. ¶ 13, 129 N.M. 767, 14 P.3d 32 (holding that pursuit of and repeated shooting at an unarmed victim who was trying to flee provided evidence of deliberate intent). These facts provide substantial evidence to support the district court's determination that Defendant made the deliberate decision to kill.

**III.    CONCLUSION**

{20}    Because sufficient evidence supports Defendant's criminal commitment for the period of time prescribed by Section 31-9-1.5, we affirm the commitment order of the district court.

{21}    **IT IS SO ORDERED.**

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

_____

**BARBARA J. VIGIL, Chief Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**EDWARD L. CHÁVEZ, Justice**

12