This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: June 10, 2024**

**No. S-1-SC-39520**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**CHRISTOPHER HUBLE,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Bennett J. Baur, Chief Public Defender
Steven J. Forsberg, Assistant Appellate Defender
Albuquerque, NM

for Appellant

Raúl Torrez, Attorney General
Benjamin Lammons, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**THOMSON, Chief Justice.**

**{1}**    Christopher Huble (Defendant) appeals his conviction for first-degree murder, NMSA 1978, § 30-2-1(A)(1) (1994) ("a capital felony"), pursuant to Rule 12-102(A)(1) NMRA (providing that capital appeals "shall be taken to the Supreme Court"). Defendant challenges his conviction on the grounds that (1) the State erred in failing to provide a self-defense instruction to the jury and (2) the State erred by giving an erroneous jury instruction. We affirm the findings of the district court by nonprecedential decision. *See*

Rule 12-405(B)(1) NMRA (allowing for disposition by nonprecedential decision when the issues have already been decided by New Mexico's appellate courts).

## I. BACKGROUND

**{2}** Defendant and Jenine Gurule had a complicated on-again-off-again relationship. At the time of the shooting, Defendant was living with a friend, and Gurule was staying in the house that Defendant owned. During that time, Defendant picked Gurule up from work and drove her home. When they arrived, Harley Benedict (Victim), whom Gurule claimed was a repairperson for the air conditioner, was in the front yard.

**{3}** Defendant left Gurule but returned less than an hour later and walked into the home unannounced. Believing Gurule and Victim had just engaged in sexual intercourse Defendant asked them both to leave the home immediately. While Gurule got dressed, Victim "got up into" Defendant's face, stared him down, followed him through a hallway, and, according to Defendant, cornered him. Again, Defendant told Victim to leave the house. Victim replied that he was not going anywhere and that Defendant would have to get a gun if he wanted Victim to leave. Defendant left and told Victim that he would return.

**{4}** Defendant walked back to his friend's trailer and retrieved the keys to his truck, his AK-47, and a loaded magazine. Defendant chose the AK-47 because of its intimidating nature. Defendant told his friend that he was "going shooting," and the friend testified that Defendant seemed "bothered" and "distressed." Gurule heard Defendant's truck as it approached the house and went outside to confront Defendant. As Gurule approached, Defendant waved her off and said, "Go get your fucking boy." Gurule went inside to inform Victim, prompting him to exit the house. As Victim exited the house, Defendant loaded the magazine into his AK-47, stepped out of the truck, took the safety off, pulled the slider back, chambered a round, and started walking around the truck. Defendant testified that Victim ran down the driveway towards him, so he fired a "burst" of bullets, pulling the trigger at least twice, killing Victim. He knew Victim was unarmed.

**{5}** Defendant's request for a self-defense jury instruction was denied, and he was tried for willful and deliberate first-degree murder. Defendant now appeals his conviction for the murder.

## II. DISCUSSION

### A. Self-Defense Jury Instruction

**{6}** Defendant argues that the court erred in failing to provide a self-defense jury instruction. Whether a jury instruction was properly denied is a mixed question of law and fact that the Court reviews de novo. *State v. Gaines*, 2001-NMSC-036, ¶ 4, 131 N.M. 347, 36 P.3d 438. "When considering a defendant's requested instructions, we view the evidence in the light most favorable to the giving of the requested instruction," *State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (internal quotation marks and citation omitted). "We do not weigh the evidence but rather determine

whether there is sufficient evidence to raise a reasonable doubt about self-defense." *Gaines*, 2001-NMSC-036, ¶ 4. "Where there is enough evidence to raise a reasonable doubt in the mind of a juror about whether the defendant lawfully acted in self-defense such that reasonable minds could differ, the instruction should be given." *State v. Baroz*, 2017-NMSC-030, ¶ 15, 404 P.3d 769 (text only)[1] (quoting *State v. Rudolfo*, 2008-NMSC-036, ¶ 27, 144 N.M. 305, 187 P.3d 170).

**{7}** To receive a self-defense instruction, there must be evidence that (1) "the defendant was put in fear by an apparent danger of immediate death or great bodily harm," (2) "the killing resulted from that fear," and (3) "the defendant acted as a reasonable person would act under those circumstances." *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). We begin by asking whether Defendant provoked the encounter and was the first aggressor by using force that created a substantial risk of death or great bodily harm. Finding that he was the first aggressor and did use that requisite force, we examine Victim's response. Based on this analysis, we hold that the evidence offered in this case was not sufficient to warrant an instruction on self-defense.

### 1. Defendant provoked the encounter and was the first aggressor

**{8}** "The rule is well established in this jurisdiction that a defendant who provokes an encounter, as a result of which he finds it necessary to use deadly force to defend himself, is guilty of an unlawful homicide and cannot avail himself of the claim that he was acting in self-defense." *State v. Chavez*, 1983-NMSC-037, ¶ 6, 99 N.M. 609, 661 P.2d 887.

**{9}** To determine whether Defendant was the first aggressor, we must first decide whether Victim provoked the encounter. *Id.* ¶ 8. Defendant argues that Victim began the violent encounter and created a substantial risk of death or great bodily harm. His theory is based on the initial interactions at the house, where Victim allegedly cornered Defendant and told him to go "get a gun."

**{10}** We addressed a similar argument in *State v. Lucero*, 1998-NMSC-044, 126 N.M. 552, 972 P.2d 1143. In *Lucero*, a defendant was denied a self-defense instruction for a fatal shooting that resulted from a gun battle with a rival. *Id.* ¶¶ 1, 4. There, the defendant alleged that the rival shot at him from his vehicle. *Id.* ¶ 2. The defendant then left the scene of this shooting and met up with some friends. *Id.* ¶¶ 2-3. The defendant later returned to the scene, armed with a nine-millimeter semiautomatic gun. *Id.* ¶ 3. He ultimately encountered the rival and his companions in a vacant lot and fired the gun into the air. *Id.* ¶¶ 2-4. This action prompted the rival to draw his gun and shoot towards the defendant. *Id.* ¶ 4. The defendant returned fire and shot two of the rival shooter's companions, killing one and wounding the other. *Id.* The *Lucero* Court concluded that because any appearance of danger that the rival created when he shot at the defendant from his vehicle had already dissipated, "there was no appearance of immediate danger

---

[1] The "text only" parenthetical indicates the omission of nonessential punctuation marks☐including internal quotation marks, ellipses, and brackets☐that are present in the text of the quoted source, leaving the quoted text otherwise unchanged.

of death or great bodily harm to [the defendant] by [the rival]" when the defendant drew and fired his weapon into the air. *Id.* ¶ 8. *Lucero* clarifies that a defendant cannot use a previous encounter to support self-defense if that danger is not present because the previous encounter had ended. *See also State v. Deleon*, S-1-SC-34808, dec. ¶ 35 (N.M. June 29, 2017) (nonprecedential) (holding that the defendant was not entitled to a self-defense instruction because the victim was no longer a threat to the defendant where the defendant had left the altercation and then returned to provoke the encounter in which he found "it necessary to use deadly force to defend himself" (internal quotation marks and citation omitted)).

**{11}**    Here, as in *Deleon* and *Lucero,* Defendant was the first aggressor. There was no immediate danger of death or great bodily harm to Defendant by Victim because Defendant left the house. After the dissipation of any potential threat, Defendant returned to the residence armed with an AK-47. In addition to returning to the house armed with an assault rifle, Defendant provoked another encounter when he told Gurule to get Victim to come outside and meet him. *See Baroz,* 2017-NMSC-030, ¶ 17 (holding that the defendant provoked the encounter when he "drove to the [victim's] residence and shouted 'Southside!'").

**2.    The exception that allows the first aggressor to invoke a claim of self-defense does not apply under the test established in *Lucero***

**{12}**    Under certain circumstances, even a first aggressor can establish a claim of self-defense if it is shown that "1. [t]he defendant was using force which would not ordinarily create a substantial risk of death or great bodily harm; and 2. [the victim] responded with force which would ordinarily create a substantial risk of death or great bodily harm." UJI 14-5191A NMRA; *see Lucero*, 1998-NMSC-044, ¶ 7.[2]

**a.    Defendant created a substantial risk of death or great bodily harm**

**{13}**    To determine whether Defendant created a substantial risk of death or great bodily harm when he returned to the house, called out for Victim, and brandished an assault rifle we again lean on *Lucero. Lucero*, 1998-NMSC-044, ¶ 8.

**{14}**    There the Court held that firing a gun into the air was a "show of potentially deadly force [that] created a substantial risk of death or great bodily harm to which [the victim] responded with equally deadly force." *Id.* ¶ 9. Similarly, Defendant's act in this case of calling Victim outside and brandishing an AK-47, was a show of potentially deadly force that created the substantial risk of immediate danger of death or great bodily harm. We turn next to Victim's response to Defendant's actions.

**b.    Victim did not respond to Defendant with force that would create a substantial risk of death or great bodily harm to Defendant**

**{15}**    Defendant argues that Victim's response to his showing of deadly force would ordinarily create a substantial risk of death or great bodily harm because unarmed

---

[2]*Lucero* relies on UJI 14-5191 NMRA (1998), which is equivalent to UJI 14-5191A.

Victim charged at Defendant. In *State v. Anaya*, this Court held that the defendant was not entitled to a self-defense jury instruction in circumstances where the defendant was not confronted by an apparent danger of death or great bodily harm. S-1-SC-34279, dec. ¶¶ 4, 33 (N.M. May 4, 2015) (nonprecedential). In *Anaya*, the defendant became violent towards a tenant and her daughter after arming himself with a gun and forcefully entering without permission. *Id.* ¶ 4. The Defendant shot and killed the daughter's boyfriend when the boyfriend intervened by punching the defendant in the face. *Id.* The Court concluded that no reasonable juror could have found that the defendant acted in self-defense where he was punched by the unarmed boyfriend in response to the lethal situation the defendant had created. *Id.* ¶ 33. Similarly, in response to the lethal situation Defendant created, no reasonable juror could conclude that Victim's actions in leaving the house and running at Defendant from a distance could have created an apparent danger of death or great bodily harm justifying a self-defense instruction.

**{16}** Defendant also argues that he was justified in his actions because Victim was larger than Defendant. In *State v. Heisler*, the Court held that the defendant was not entitled to a self-defense instruction simply because there was an "appreciable disparity in size." 1954-NMSC-032, ¶ 12, 58 N.M. 446, 272 P.2d 660. There, the unarmed victim was three inches taller and seventy pounds heavier than the defendant, and the victim had actually physically engaged the defendant, holding him in a "bear hug." *Id.* ¶¶ 12, 27. Regardless of the size difference and physical contact, this Court determined that "the evidence did not authorize instructions on the law of self-defense." *Id.* ¶ 31. Defendant's argument for a self-defense instruction fails because the response by Victim was not with force that would ordinarily create a substantial risk of death or great bodily harm to Defendant.

## B. Forcible Eviction Jury Instruction

**{17}** Defendant argues the trial court committed reversible error by using an instruction not approved as a uniform instruction that read, "New Mexico does not permit a landlord or owner to forcefully evict a tenant or resident, let alone an invitee, by unilateral action outside the legal system." "To preserve an argument for appellate review, it must appear that an appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." *Schuster v. N.M. Dep't of Tax'n & Revenue*, 2012-NMSC-025, ¶ 33, 283 P.3d 288 (internal quotation marks and citation omitted). At trial, Defendant did not argue that the given instruction misstated the law or that it was not a uniform jury instruction. Instead, Defendant argued that the instruction was not appropriate because Gurule was not a resident or tenant where there was no rental agreement. Thus, the issue was unpreserved, and we review for fundamental error. *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134.

**{18}** To determine whether the erroneously provided jury instruction rises to the level of fundamental error, we look to "whether a reasonable juror would have been confused or misdirected by the jury instruction," *State v. Cunningham*, 2000-NMSC-009, ¶ 14, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). "[J]uror confusion or misdirection may stem not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or

misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Benally*, 2001-NMSC-033, ¶ 12. "For fundamental error to exist, the instruction must differ materially from the uniform jury instruction, omit essential elements, or be so confusing and incomprehensible that a court cannot be certain that the jury found the essential elements under the facts of the case." *State v. Caldwell*, 2008-NMCA-049, ¶ 24, 143 N.M. 792, 182 P.3d 775 (text only) (citation omitted).

**{19}** Defendant argues, a juror could have been confused "and misdirected by the erroneous instruction . . . because it was a misstatement of the law." The instruction on its own is an accurate statement of the law. The instruction as written comes straight from *Anaya*, S-1-SC-34279, dec. ¶ 27. The instruction's addition of the words "or resident, let alone an invitee" does not change the meaning such that it becomes contrary to law. The instruction is plainly irrelevant to the facts of this case as no evidence or theory indicated that Defendant killed Victim while trying to evict him, there was no rental agreement, Defendant was not a landlord, Gurule was not a tenant, and Victim was not an invitee. For these reasons, the instruction should not have been given, but that does not make it error.

**{20}** There is no direct evidence that the jury was confused because jurors did not question the instruction, and their verdict was not infirm in any way. *See State v. Romero*, 2009-NMCA-012, ¶ 25, 145 N.M. 594, 203 P.3d 125 (inferring that the jury was not confused because it did not request a definition). Further, the instruction did not conflict with any other instruction. *See Benally*, 2001-NMSC-033, ¶¶ 18, 22 (determining fundamental error where one jury instruction supplied a burden of proof and another did not).

**{21}** Defendant suggests that the instruction's use of the phrase "outside the legal system" could be perceived by a lay jury as a prejudgment of the legality of Defendant's actions. This extraneous instruction does not amount to fundamental error that "'shock[s] the conscience' or implicate[s] a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *Cunningham*, 2000-NMSC-009, ¶ 21 (citation omitted).

**{22}** Therefore, the district court's issuance of a legally correct but irrelevant jury instruction does not amount to fundamental error.

## III. CONCLUSION

**{23}** For the reasons set forth above, we affirm the findings of the district court.

**{24} IT IS SO ORDERED.**

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**

**BRIANA H. ZAMORA, Justice**